# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

————————

m 99-50254

————————


ROBERT BRISTER, ROGER BAKER, ERIC SAMSON, AND WILLIAM MEDAILLE,

Plaintiffs-Appellees-
Cross-Appellants,

VERSUS

LARRY FAULKNER, ETC., ET AL.,

Defendants,

EDWIN R. SHARPE,
IN HIS OFFICIAL CAPACITY AS VICE PRESIDENT FOR ADMINISTRATION AND PUBLIC AFFAIRS
AT THE UNIVERSITY OF TEXAS AT AUSTIN;
DONALD L. EVANS,
IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF REGENTS
OF THE UNIVERSITY OF TEXAS SYSTEM;
HONORABLE TOM LOEFFLER,
IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF REGENTS
OF THE UNIVERSITY OF TEXAS SYSTEM;
RITA C. CLEMENTS,
IN HER OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF REGENTS
OF THE UNIVERSITY OF TEXAS SYSTEM;
THOMAS C. HICKS,
in His Official Capacity as a Member of the Board of Regents
of the University of Texas System;
LOWELL H. LEBERMANN, JR.,
in His Official Capacity as a Member of the Board of Regents
of the University of Texas System;

PATRICK C. OXFORD,
IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF REGENTS
OF THE UNIVERSITY OF TEXAS SYSTEM;
A.W. "DUB" RITER, JR.,
IN HIS OR HER OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF REGENTS
OF THE UNIVERSITY OF TEXAS SYSTEM;
A.R. (TONY) SANCHEZ, JR.,
IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF REGENTS
OF THE UNIVERSITY OF TEXAS SYSTEM;
MARTHA E. SMILEY,
IN HER OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF REGENTS
OF THE UNIVERSITY OF TEXAS SYSTEM;
AND
LARRY FAULKNER,
IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNIVERSITY OF TEXAS AT AUSTIN,

Defendants-Appellants-
Cross-Appellees.

————————————————

Appeal from the United States District Court
for the Western District of Texas

————————————————

June 28, 2000

Before POLITZ, SMITH, and DENNIS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Plaintiffs were handing out leaflets before an on-campus event at the University of Texas at Austin's Frank C. Erwin Jr. Special Events Center (the "Erwin Center") when they were forced to leave the property because they were interfering with the arrival and departure of the facility's patrons. They sued university officials under 42 U.S.C. § 1983, seeking damages, declaratory relief, and an injunction against future First Amendment violations.

The district court entered a declaratory judgment that the property in question is a "public forum," because it is indistinguishable from the city sidewalks; therefore, the court held that the university's total ban on leafleting by non-students was not a reasonable time, place, or manner restriction and is unconstitutional. Because it determined that these plaintiffs were impermissibly blocking patrons' access to the facility, however, the court ruled that the university's officers were justified in requiring plaintiffs to move from

2

the property. Thus, the court held that the university did not violate the plaintiffs' constitutional rights, and, consequently, that they were not entitled to damages or injunctive relief. Accordingly, the court also denied attorneys' fees.

The defendants appeal, challenging the determination that the property is a public forum. The plaintiffs cross-appeal the denial of nominal damages, injunctive relief, and attorneys' fees. Finding no reversible error, we affirm.

I.

The Erwin Center was designed and is maintained for use by the public for the benefit of the university. The center hosts a wide variety of academic, athletic, and auxiliary events each year. Tickets to these events are sold by the university to the general public, and events are sponsored by university organizations and by groups not affiliated with the university.

The Erwin Center is surrounded on all sides by public streets: Martin Luther King, Jr., Boulevard on the north, Fifteenth Street on the south, Interstate 35 on the east, and Red River Street on the west. The City of Austin owns a nine- to twelve-foot easement along each of the center's four sides that serve as the city's public sidewalks. A portion of the university's property on the center's Red River Street side consists of a brown gravel area paved with small stones that extends from the center's public entrance out to the sidewalk. This property blends in with the city's sidewalks, and there is no physical demarcation indicating where university property ends and the city's easement begins.

In January 1996, the Austin Chamber of Commerce hosted a reception at the Erwin Center for the delegates to the National Issues Convention. Members of the Austin Greens political party, including plaintiffs Brister, Baker, Samson, and Medaille, attempted to distribute leaflets to the delegates as they entered the Erwin Center on the Red River Street side. Only Samson and Medaille were University of Texas students. Some of the convention delegates approached the center by walking along the sidewalk and paved area, while others were transported to the center by buses that had pulled into the center's parking lot, located on a recessed area cut into the paved portion of the property.

After receiving numerous complaints about the leafleters, Officer Pascual Marquez, a university police officer, approached Brister while he was distributing leaflets on the paved area, and informed him of the school's policy against non-students' distribution of literature on university property. Marquez also explained that the paved recessed area belonged to the university, whereas the sidewalk belonged to the City of Austin, and told Brister he had to remain south of UT's recessed area. Brister continued to leaflet on the paved area and, after another confrontation with Marquez, returned to the south of the university property and joined other Austin Greens members who were displaying a banner.

Medaille also was approached by a university police officer (not Marquez) and was told that he could not distribute leaflets on the paved area. Medaille identified himself as a University of Texas student but nonetheless was prohibited from distributing the leaflets, because they did not contain his name or the name of a student organization, as required by university rules. The district court found that other than Brister and Medaille, none of the

leafleters were approached by the school's police.

## II.

Plaintiffs sued Larry Faulkner, President of the University of Texas at Austin; its Vice-President for Administrative Affairs; and the members of the University of Texas System Board of Regents, all in their official capacities, under § 1983, for prospective relief, claiming their First Amendment rights to free speech and assembly were infringed by the policy prohibiting non-students from distributing leaflets and other literature on university property. Also under § 1983, plaintiffs sought damages from Buzz Huber, Events Manager for the Erwin Center; and Marquez and Lieutenant Robert Ewan of the university's police department, in their individual and official capacities.[1]

The district court dismissed the claims against Huber and Ewan but otherwise denied summary judgment for defendants. After a one-day bench trial, the court concluded that the university's rules are unconstitutional as applied to the paved area along Red River Street, because that area is a traditional public forum for First Amendment purposes. The court further held, however, that the plaintiffs had suffered no cognizable constitutional injury, because their activities disrupted the delegates and impeded access to the Erwin Center

___

[1] Additionally, the plaintiffs challenged the University's rules as applied to the West Mall area of the main campus, which arose out of an April 1996 incident in which Brister similarly attempted to distribute leaflets. The district court held that this area was a non-public forum as applied to the general public and that UT's regulations were reasonable content neutral restrictions. That ruling has not been appealed.

and, thus, the officers' actions were reasonable.

## III.

The university[2] contends that because the court found that the plaintiffs had suffered no constitutional injury regardless of whether the paved area outside the Erwin Center is a traditional public forum or a non-public forum, the court rendered an improper advisory opinion in characterizing the nature of the forum. In support of its claim, the university points to the district court's decision on plaintiffs' motion to amend the judgment, in which it stated: "Even if the Court's order [holding that paved area is a traditional public forum] had been in effect [], it would not have required the defendants to alter their behavior toward the plaintiffs. . . . The plaintiffs failed to prove any actual, compensatory injuries or obtain any injunctive relief." The university asserts that the court's ruling on plaintiffs' injuries mooted the forum question and thus deprived the court of jurisdiction over that issue.

The plaintiffs claim, in response, that the court rendered a valid declaratory judgment, because each of the plaintiffs presented a viable controversy: Each attempted to distribute leaflets and was ordered to stop by police, and each was threatened with arrest if he continued his activities. Further, plaintiffs argue that the failure of the district court to award all the relief requested does not render its judgment on the public forum issue merely advisory.

The university's position is without merit. Although the district court stated several times that the plaintiffs' constitutional rights were

___

[2] Although the defendants are natural persons, we sometimes refer to them, for simplicity, as "the university."

4

not violated and that they failed to prove any actual, compensatory injuries sufficient for injunctive relief, those facts did not deprive the district court of jurisdiction to award declaratory relief.

In *Steffel v. Thompson*, 415 U.S. 452 (1974), the Court was presented with a challenge to the justiciability of a declaratory judgment action where the plaintiff had not yet been charged with any crime under the relevant state criminal trespass statute. The plaintiff sought declaratory relief, claiming that application of that law would violate his First and Fourteenth Amendment rights to distribute handbills at a shopping center. The Court held that the case presented an "actual controversy," that federal declaratory relief is not precluded when a prosecution based on an assertedly unconstitutional state statute has been threatened, but is not pending, and that the plaintiff's failure to demonstrate irreparable injury and to obtain injunctive relief does not preclude declaratory relief.

Significantly, the petitioner had "been twice warned to stop handbilling that he claims is constitutionally protected and [had] been told by the police that if he again handbill[ed] at the shopping center and disobey[ed] a warning to stop he [would] likely be prosecuted." *Id.* at 459. The Court reasoned that "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Id.*[3] In addition to its concerns about unnecessarily exposing citizens to criminal sanctions, the Court discussed the unique nature of

---

[3] *See also KVUE, Inc. v. Austin Broadcasting Corp.*, 709 F.2d 922, 928 & n.3 (5th Cir. 1983) (quoting *Steffel*).

declaratory relief:

[E]ngrafting upon the Declaratory Judgment Act a requirement that all of the traditional equitable prerequisites to the issuance of an injunction be satisfied before the issuance of a declaratory judgment is considered would defy Congress' intent to make declaratory relief available in cases where an injunction would be inappropriate. . . . Thus, the Court of Appeals was in error when it ruled that a failure to demonstrate irreparable injurySSa traditional prerequisite to injunctive relief, having no equivalent in the law of declaratory judgmentsSSprecluded the granting of declaratory relief. The only occasions where this Court has disregarded these "different considerations" and found that preclusion of injunctive relief inevitably led to a denial of declaratory relief have been cases in which principles of federalism militated altogether against federal intervention in a class of adjudications.

*Id.* at 471-72.

Similarly, in *International Soc'y for Krishna Consciousness v. Eaves*, 601 F.2d 809 (5th Cir. 1979), we held that a religious organization's anticipatory challenge to a municipal ordinance regulating the distribution of literature and solicitation of funds at a city-owned airport was a justiciable actual controversy. We noted that "the premise of *Marbury v. Madison* requires us to insist that an anticipatory challenge to a statute's constitutionality grow out of a 'real, substantial controversy between parties . . . a dispute definite and concrete.'" *Id.* at 817 (citations omitted). Thus, to determine

whether there was a "definite and concrete" dispute, we asked "whether the plaintiff is seriously interested in disobeying . . . the challenged measure." *Id.* at 818. And we summarized the actual-controversy requirement with respect to anticipatory challenges in the following terms: "We can be most certain that a constitutional challenge grows out of a genuine dispute and is not a contrivance prompted solely by a desire to enforce constitutional rights if we know that the allegedly unconstitutional statute interferes with the way the plaintiff would normally conduct his affairs." *Id.* at 819.

There can be no doubt that plaintiffs were seriously interested in disobeying the university's policy prohibiting non-students from distributing leaflets on campus. Indeed, like the petitioner in *Steffel*, several of the plaintiffs had been approached more than once by Marquez and other officers and had been threatened with arrest if they did not move to the public sidewalks away from the entrance to the Erwin Center. Although plaintiffs are not challenging the constitutionality of a criminal statute *per se*, the university's policy, if upheld, would allow its police to arrest the leafleters under a criminal-trespass theory. Accordingly, there is no distinction between the conundrum faced by the individuals in *Steffel* and *Eaves*, on the one hand, and the dilemma faced by the instant plaintiffsSSeither they risked being criminally punished by engaging in "conduct which [they] may have honestly thought was constitutionally protected," or, else, they would be deterred from "engaging in protected activity and enforcing constitutional rights." *Eaves*, 601 F.2d at 821.

In no way are plaintiffs' "threats of prosecution . . . imaginary, speculative or chimerical": The officers were fully prepared to arrest the protesters if they did not comply with the officers' instructions. Thus, plaintiffs have demonstrated the existence of an Article III controversy. *See High Ol' Times, Inc. v. Busbee*, 621 F.2d 135, 139 (5th Cir. 1980). *Steffel* teaches that it is irrelevant whether plaintiffs were successful in obtaining monetary or injunctive awards and that, instead, declaratory judgment relief is a proper way for individuals to proceed to ensure that their constitutional rights are protected.

IV.

On the merits of the forum issue, the university challenges the district court's conclusion that this particular university propertySSoutside the Erwin Center, between the public entrance and Red River StreetSSis indistinguishable from the Austin city sidewalks and, for that reason, is a traditional public forum. "The Court has identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998) (internal quotations and punctuation omitted). Traditional public fora "are defined by the objective characteristics of the property, such as whether, 'by long tradition or by government fiat,' the property has been 'devoted to assembly and debate.'" *Id.* (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). Thus, the district court correctly observed that public sidewalks are, by long tradition, public fora.[4]

In determining that the university's paved area adjacent to the Austin sidewalk is a public

---

[4] The university does not challenge the conclusion that Austin's sidewalks are public fora.

forum, the district court relied primarily on *United States v. Grace*, 461 U.S. 171 (1983), holding that a statute prohibiting displaying "in the Supreme Court building, or on its grounds, any flag, banner, or device designed to bring into public notice any party, organization, or movement," was an unreasonable place restriction on the exercise of free speech and was unconstitutional. Particularly troubling to the Court was the fact that the statute's ban applied to the public sidewalks surrounding the Court building, because sidewalks are traditional public fora. *See id.* at 178-79. The Court did not opine on whether the statute was unconstitutional as applied to the building and grounds inside the sidewalks, however, but instead relied on its observation that "the sidewalks comprising the outer boundaries of the Court grounds are indistinguishable from any other sidewalks in Washington, D.C., and we can discern no reason why they should be treated any differently." *Id.* at 179.

*Grace*, then, frames the terms of the dispute. On the one hand, the university seeks to distinguish the holding that the statute was unconstitutional as applied to the public sidewalks. It argues that the district court incorrectly presupposed the outcome-determinative conclusionSSi.e., it relied on *Grace* to establish that the university's grounds were *themselves* a public sidewalk and, therefore, a public forum.

The university is in fact correct that *Grace* is not a perfect fit for that conclusion, because there the Court compared the sidewalks in question to "any other sidewalks in Washington, D.C.." Notably, the Court did not compare those sidewalks to the internal grounds of the Court building; indeed, the Court expressly refused to make any judgment as to the building and grounds inside the

sidewalks. *See id.* at 178-79. Thus, the university relies on the general rule that "[a] university differs in significa
nt respects from public forums such as streets or parks or even municipal theaters." *See Widmar v. Vincent*, 454 U.S. 263, 268 (1981).

On the other hand, plaintiffs argue that *Grace* still supports the district court's conclusion that the Erwin Center's grounds that are adjacent to the Red River Street sidewalk are a public forum. They point to the Court's concern that "[t]here is no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks that serve as the perimeter of the Court grounds that they have entered some special type of enclave." *Grace*, 461 U.S. at 180.

Likewise, here there is no indication or physical demarcation of the public sidewalk, which is a public forum, and the university grounds, which typically are not. The university challenges this assertion, however, arguing that its police officers provide verbal warnings sufficient to establish a reasonable boundary line. It points to the undisputed facts in the instant case that demonstrate that Marquez and the other officers repeatedly informed the plaintiffs of when they impermissibly had crossed onto university property.

But these verbal warnings are not sufficient. First, the facts of *Grace* undermine the university's claim that repeated warnings can suffice to establish a boundary between public and non-public fora. The petitioners there had been threatened with arrest several different times while they were protesting on the public sidewalks bordering the Court building, and each time they left without an incident. Thus,

they plainly knew that the statute prohibited demonstrations on these particular sidewalks outside the Court, but, nevertheless, the Court held that there was nothing to distinguish these sidewalks from any other sidewalks in the District of Columbia.

The university seeks to distinguish this fact as well, and it correctly observes that *Grace* "does not address the question of whether an oral warning would serve as a sufficient 'indication' of the boundary between the sidewalk and the plaza—or, indeed, whether any 'physical demarcation' is required at that point at all." It argues that the Austin public sidewalk cannot reasonably be thought to extend all the way from the curb to the base of the building, and it warns that the definition of constitutional public fora should not turn on the architectural characteristics of individual buildings. In other words, if the university had not chosen to pave the Erwin Center's grounds with the same brown stones as those used for the public sidewalk, there would be little question that the property in question was not a public forum.

Yet the university cannot so easily avoid *Grace*'s reasoning. In addition to its desire to protect the traditional public fora, the Court was concerned with the adequacy of the notice provided to those who reasonably thought they were on public grounds. This is evident from the Court's prolonged discussion of the lack of any indication or dividing line that would inform a protester that he had entered some special "enclave" where free speech was not protected. Similarly, here the plaintiffs and other members of the public cannot be certain when they have entered the university's enclave, and notwithstanding the university's concerns about the intricacies of architectural design, First Amendment cases often turn on very particular facts.

While both sides make plausible arguments, and while it could be onerous for the university to have to open up the entire area outside the Erwin Center to public discourse, the concerns with chilling otherwise constitutionally-protected speech are paramount. If individuals are left to guess whether they have crossed some invisible line between a public and non-public forum, and if that line divides two worlds—one in which they are free to engage in free speech, and another in which they can be held criminally liable for that speech—then there can be no doubt that some will be less likely to pursue their constitutional rights, even in the world where their speech would be protected.

Moreover, it is of little consequence that the university's officers first warn the protesters before they arrest them. The constitutional right to free speech suffers injury when this impermissible amount of doubt is introduced, and when constitutional expression is chilled.

Furthermore, the university's burden is not so overwhelming as it claims. While the district court did hold that the Erwin Center's grounds, between the base of the building and the curb of Red River Street, were a public forum, it nevertheless left the university the option of reasonable time, place, and manner restrictions. Thus, the university still can remove anyone who interferes with the flow of traffic to and from the Erwin Center, thereby ensuring that the university's interests retain some protection.

The district court reached the correct conclusion based on the very specific facts set forth here—i.e., a unique piece of university property that is, for all constitutional purposes,

indistinguishable from the Austin city sidewalk. Accordingly, the judgment in that respect is affirmed.[5]

## V.

On cross-appeal, plaintiffs present three challenges to the conclusion that they suffered no violation of their constitutional rights. We consider each in turn.

## A.

Plaintiffs contend that the court committed clear error in finding that Medaille, Baker, and Samson impeded access to the Erwin Center and otherwise disrupted the delegates.[6] As a result, plaintiffs argue that each should have been awarded nominal damages for prevailing on his constitutional claim.[7] They maintain that the record is wholly devoid of evidence that Baker, Samson, or Medaille ever was in front of the doors to the Erwin Center restricting the delegates' access. With respect to Baker and Samson, the plaintiffs claim the record reflects that once they were instructed

to get off the sidewalk and, erroneously, that the university's property encompassed the entire sidewalk area along Red River, they proceeded to hand out pamphlets while standing in the street.

This dispute is primarily factualSSwhether there was sufficient evidence to support the finding that the plaintiffs impeded patrons' access to the Erwin Center and, therefore, that the officers were justified in requiring them to move pursuant to a reasonable time, place, and manner restriction. If such evidence is in the record, plaintiffs concede that they cannot demonstrate clear error, even if there is contradictory evidence supporting their position. But, plaintiffs argue that there is *no* evidence that Medaille, Baker, or Samson ever was directly in front of the center's doors or that any of them in some other way blocked delegates from getting inside, because neither Marquez nor any other university officer testified to such fact.

By contrast, the three plaintiffs point to Marquez's testimony that the leafleters, other than Brister, "were not in the immediate area." These plaintiffs assert that the closest testimony supporting the district court's conclusion was Marquez's statement that he "noticed approximately five solicitors with a large banner and passing out leaflets as people exited the buses." But, plaintiffs note that there was no mention that the leafleters were preventing people from getting off the buses, nor did anyone identify the plaintiffs as the particular leafleters Marquez observed.

Thus, plaintiffs contend that they were required to leave the public sidewalk, not the university grounds, despite the fact that they were not impeding anyone's entry into the Erwin Center. If this is so, then, plaintiffs argue

---

[5] This holding applies only to the specific property at issue on Red River Street and is not to be interpreted to apply to any other property around the perimeter of the Erwin Center or elsewhere, about which we express no opinion.

[6] Plaintiffs concede that there is contradictory evidence in the record to support the district court's findings of fact with respect to Brister.

[7] *See, e.g., Fyfe v. Curlee*, 902 F.2d 401 (5th Cir. 1990); *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983) (plaintiff who prevails on constitutional claim but who otherwise does not suffer any injury is entitled to nominal damages). The plaintiffs also insist that Brister is entitled to nominal damages because he successfully demonstrated that an unconstitutional act occurred, even though his own conduct prevented his suffering any damages.

that the finding that these three plaintiffs inhibited delegates from entering the center is clearly erroneous, and, therefore, that the finding that their constitutional rights were not violated should be reversed, for the reason that this factual finding formed the only basis for the court's legal conclusion.

The university responds by noting that the court simply discounted these plaintiffs' self-interested and unbelievable testimony. It contends that the plaintiffs' account should be disbelieved because they admitted that their recollection of events was hazy, and because that account is inconsistent with other facts that are not in dispute. Specifically, the school claims that this account is not consistent with the fact that other demonstrators apparently were allowed to distribute literature within the city's sidewalk, in full view of university police, and that no university personnel attempted to stop them.[8] Also, none of the plaintiffs could identify the officer(s) who allegedly told them that they could not distribute literature even on the sidewalk between the Erwin Center and Red River Street.

Because we are under a clearly erroneous standard of review, we cannot second guess the district court's decision to believe Marquez's testimony over Brister's and to discount the other plaintiffs' statements that

they were interfering with no one. Also, there is evidence that Baker and Samson stood in the recessed area of the university property, where the buses were dropping off delegates, and offered leaflets to people as they got off these buses. While it is uncertain whether this leafleting inhibited patrons' access to the Erwin Center, the court could have concluded that this was enough for the officers to ask the plaintiffs to move back to the sidewalk, and it refutes plaintiffs' claim that they restricted their activities to only the sidewalk.

## B.

Plaintiffs argue that Medaille, who claimed to have identified himself as a student to an unspecified university police officer, impermissibly was held to a higher standard than were other university students, because the officer asked him to produce documentation that proved he was authorized to leaflet on campus. Medaille correctly points out that, as a student, he is not required to have prior authorization to leaflet on campus.

But, nevertheless, Medaille failed another requirement of university policy, namely, that any leaflet distributed by a student organization identify that organization on the face of the document. Because plaintiffs' pamphlets did not contain any such identification, Medaille's claim is moot.[9]

---

[8] The university also tries to argue that, even if plaintiffs could prove that university police ordered them not to distribute materials anywhere on the Red River sidewalk, "it is legally inconsequential," because the only area where they wanted to distribute leaflets was the space in front of the Erwin Center's doors. But this claim is unsupported by any evidence and is contrary to the plaintiffs' complaint that they could not leaflet on the sidewalk. Obviously, plaintiffs wanted to leaflet anywhere they could, the closer the better.

[9] Notably, plaintiffs do not present an overbreadth challenge to this aspect of the university's regulations, as they are a reasonable time, place, and manner restriction aimed at ensuring the university can hold student organizations accountable for littering and the like. Unless they can show that Medaille or another student was treated unfairly, then, plaintiffs have no remaining claim.

10

C.

To challenge the holding that they suffered no violation of their constitutional rights, plaintiffs attack what they call the "phantom time, place and manner restrictions." They argue that the court's finding that the officers were justified in preventing them from distributing leaflets, when that distribution interfered with the flow of visitors to and from the Erwin Center, was erroneous, because the only place and manner that existed was the university's absolute ban on non-students' distributing of literature on university property. Thus, plaintiffs assert that the university chose not to promulgate time, place, and manner restrictions that would balance its interests against those of persons wishing to exercise their constitutional rights.

But, in their brief, plaintiffs expressly abandon any void-for-vagueness argument, and, as a result, we cannot see what they hope to accomplish. They have not shown, or even argued, that the ban on leafleting during these events would be an unreasonable restriction were it expressly promulgated, nor have they argued that the university discriminated against them on the basis of the content of their message.

Perhaps plaintiffs are trying to contend that the "phantom" restrictions are not narrowly tailored to serve a legitimate government interest. But the district court has already struck down the only restrictions that are codified, at least with respect to this property, and the university correctly points out that it did not have a more narrow time, place, or manner restriction to evaluate because, until the district court's decision in the instant case, the university did not consider the grounds to be a public forum.

Thus, plaintiffs have not developed their argument here, and they have identified no reversible error. Therefore, we affirm the district court's ruling that plaintiffs suffered no violation of constitutional rights.

VI.

Plaintiffs aver that the court erred in denying them nominal damages. Part of their reasoning is based on their contention, rejected above, that we should reverse the district court's determination that their constitutional rights were not violated. But plaintiffs also argue that regardless of the ruling that they sustained no actual injuries, the court still should have awarded them nominal damages.

Plaintiffs cite cases such as *Russell v. Harrison*, 736 F.2d 283, 291 (5th Cir. 1984), in which we noted that "if upon remand, the district court finds a denial of procedural due process, actual damages may be awarded under 42 U.S.C. § 1983, and nominal damages are appropriate in the event that no actual damages are shown." Plaintiffs also reason that "[b]y making deprivation of such [constitutional] rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed." *Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988) (quoting *Carey v. Phiphus*, 435 U.S. 247, 266 (1978)).

These authorities do not support plaintiffs' contention that they are entitled to nominal damages, however, because all of them depend on the pre-existing determination that their constitutional rights were violated. That is not the case here, for the district court expressly held that "*none of the plaintiffs' constitutional rights were violated* because the University police officers, both Marquez who approached

11

Brister and the unidentified officers who approached the other plaintiffs, were justified in requiring the plaintiffs to move away from the Red River doors." Instead, it was the university's policy banning all leafleting by non-students on university property, and not its treatment of the individual plaintiffs, that was unconstitutional.

As a result, the district court fashioned the appropriate relief, a declaratory judgment that the policy would be unconstitutional if applied to the public forum outside the Erwin Center, on the Red River Street side, without proper time, place, or manner restrictions. Nominal damages were neither necessary nor proper in this circumstance, and the court committed no error in refusing them.

VII.

Plaintiffs claim that the district court abused its discretion in denying injunctive relief that would have forced the university to comply with its order. They assert that the university has failed to abide by a prior ruling that held that the same university regulation was unconstitutional for overbreadth. Plaintiffs therefore conclude that the university should not be trusted to comply with the current order.

The prior order, in *Mencio v. University of Tex.*, Civ. Ac. No. A-84-CA-146 (W.D. Tex., May 19, 1986), provided, in pertinent part, that the policy was "unconstitutional due to its overbreadth," in that it "provide[d] for the absolute prohibition of distribution of leaflets by non-students, faculty and staff." The policy was constitutionally unsound because the university had created a "public forum" at which the First Amendment Rights of non-students could not be abridged.

UT responds by asserting that it has not violated that order, because its reasoning demonstratedSSby reference to an earlier ruling in the same caseSSthat the "public forum" the university had created was time-limited as well as fact-specific:

In the fact situation presently before the Court, the University has invited several well known individuals to participate in a seminar. The record reflects that the seminar was open to the public and that the public would be invited to verbally participate in the seminar. In light of these circumstances and the applicable case law, it is clear that the University created a "public forum" *at this particular place and at this particular time*. Consequently, the first amendment rights of non-students would be abridged if they were not allowed to distribute literature along with University students.

In contrast to the circumstances that motivated the prior order, the university points out that the current controversy centers on whether the Erwin Center's grounds are a traditional public forum, not on whether the university created a "designated public forum" by inviting individuals to attend any events.[10] Consequently, the university reasonably thought that its ban on non-student leafleting did not apply to the Erwin Center grounds, because if it were not a traditional public forum (and no court had previously held that it was), it would have been either a non-public forum or not a forum at all. Thus, the district court properly determined that no injunction

---

[10] *See, e.g., Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998) (discussing the creation of designated public fora).

12

was necessary to ensure future compliance, because there is no merit to plaintiffs' assertion that the university wilfully ignored a court order.

## VIII.

Plaintiffs contend they are entitled to attorneys' fees under 42 U.S.C. § 1988 as prevailing parties, because they were awarded declaratory relief on their constitutional claim and because the court's ruling "materially alters" the legal relationship between the parties.[11] It is of no consequence, according to the plaintiffs, that they did not prevail on any of their claims for damages or injunctive relief, because the declaratory judgment in their favor should be sufficient to establish them as a "prevailing party" under *Farrar v. Hobby*, 506 U.S. 103 (1992).

The university counters that fees are not justified, because the plaintiffs suffered no constitutional injury. While the Court in *Farrar* liberally construed the term "prevailing party" under § 1988, the Court did contemplate there will be limits on the awards of fees. For instance, it noted that "a judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party." *Id.* at 112. The Court observed that a plaintiff who wins either compensatory or nominal damages is a prevailing party, but this is so because there is necessarily a determination that his constitutional rights have been violated.

Here, as the district court expressly found, plaintiffs' constitutional rights were not violated. Although, they did obtain a declaratory judgment that the policy banning all leafleting by non-students at the Erwin Center was unconstitutional, that judgment did nothing to alter the legal relationship *between these parties*. That is, plaintiffs still could not leaflet at the time, and in the manner, that they sought. Instead, the judgment put the university on notice that in the future, it could impose only reasonable time, place and manner restrictions on leafleting in this traditional public forum.

Nor are plaintiffs saved by their reliance on *Doe v. Santa Fe Indep. Sch. Dist.*, 168 F.3d 806 (5th Cir.), *cert. granted*, 120 S. Ct. 494 (1999), which they cite for the proposition that a declaration that a policy is unconstitutional is sufficient for entitlement to fees. But the university correctly observes that the court in *Santa Fe* awarded attorneys' fees because the plaintiffs there "obtained a judgment vindicating the Santa Fe students' important First Amendment Rights in both graduation ceremony and football game contexts." *Id.* at 823. In other words, the court found that the student-led prayer violated other students' constitutional rights to be free from proselytizing at these school-sanctioned events.

Thus, for the same reasons that *Farrar* is inapposite, so is *Santa Fe*SSboth involved violations of the plaintiffs' constitutional rights, while the instant case does not. Therefore, the district court did not err in denying attorneys' fees.

AFFIRMED.

---

[11] The plaintiffs' demand for attorneys' fees is also premised on their contention that the district court erroneously denied them nominal damages and injunctive relief. Because we have rejected both of these claims, however, we need not reconsider them here.