Matt BOURGAULT, Plaintiff,

v.

Mark YUDOF, in his official capacity as Chancellor of the University of Texas System, Cullen M. Godfrey, in his official capacity as Vice–Chancellor of the University of Texas System, Charles Miller, in his official capacity as the Chairman of the Board of Regents for the University of Texas System, Dr. James Spanielo, in his official capacity as President of the University of Texas at Arlington, Dr. Kent Gardner, in his official capacity as Vice President for Student Affairs of the University of Texas at Arlington, Jeff Sorenson, individually and in his official capacity as Director of Student Governance and Organizations of the University of Texas at Arlington, and Sergeant M. McCord, individually and in his official capacity as police officer with the police department of the University of Texas at Arlington, Defendants.

No. Civ.3:04–CV–0098–H.

United States District Court,
N.D. Texas,
Dallas Division.

May 4, 2004.

Nathan W. Kellum, Memphis, TN, for Plaintiff.

Ingrid K. Hansen, Office of the Attorney General of Texas, Austin, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER

SANDERS, Senior District Judge.

Before the Court are Plaintiff's Motion for Preliminary Injunction, filed January 20, 2004; Defendants' Response, filed March 31, 2004; and Plaintiff's Reply, filed April 15, 2004. Plaintiff Matt Bourgault ("Bourgault") seeks a preliminary injunction enjoining Defendants the Chancellor, Vice–Chancellor, and Chairman of the Board of Regents of the University of Texas System; the President, Vice–President of Student Affairs, and Director of Governance and Organizations of the University of Texas at Arlington; and a Sergeant of the University of Texas at Arlington's police department, from "applying the speech requirements set out in Board of Regents' Rules and Regulations for the University of Texas System and Campus Policy of the University of Texas at Arlington for off-campus speakers to the individual expression of Matt Bourgault." (Mot. at 2.) Defendants oppose the preliminary injunction. Upon review of the pleadings, briefs, and relevant authorities, the Court is of the opinion for the reasons stated below that Plaintiff's Motion for Preliminary Injunction should be DENIED.

### I. BACKGROUND

Bourgault is "a professing Christian and a traveling evangelist for his religious beliefs." (Pl.'s Br. at 1.) Specifically, Bourgault travels to public universities throughout the country to preach and hand out pamphlets to college students as part of his ministry with Consuming Fire Campus Ministries. (*Id.*)

On April 22, 2002, Bourgault visited the University of Texas at Arlington ("UTA"), a component institution of the University of Texas System ("UT System"), and began to preach from a pedestrian area near the campus university center. (*Id.* at 2.) Some time after he began to preach, Defendant Sergeant McCord of the UTA police approached Bourgault and informed him that he needed permission from the student governance office to speak on campus. (*Id.*) Bourgault went to the student governance office and filled out an application. (*Id.*) On the application, Bourgault requested the use of a "free speech forum near Library or University Center; to

preach from Bible to students."[1] (*See* Pl.'s Mot., Exh. C.) He identified himself as an off-campus speaker and identified Consuming Fire Campus Ministries as the organization seeking to hold a campus event. (*Id.*) He also indicated that there was no student organization co-sponsoring the event. (*Id.*) Defendant Jeff Sorensen, the Director of Student Governance and Organization for UTA, denied Bourgault's request and wrote "Not approved per Univ. Policy" on the application. (*Id.*)

On June 21, 2002, Bourgault's attorney wrote to Defendant Sorensen, explaining the above described events and requesting permission that Bourgault be allowed to speak on campus. (*See* Defs.' App., Exh. A.) Defendant Sorensen forwarded Bourgault's attorney's letter to the Office of General Counsel for the UT System, who replied to Bourgault's attorney in a letter dated July 3, 2002, that because Bourgault is not a student, faculty member, or staff member of UTA, he cannot engage in speech activities on the UTA campus. (*See* Defs.' App., Exh. B.) The letter cited the Board of Regents' Rules and Regulations Chapter VI, Part One, Subsections 6.1[2] and 6.2,[3] ("Rule 6.1" and "Rule 6.2"). (*Id.*) Additionally, the Office of General Counsel informed Bourgault that he "may not engage in the desired speech activity . . . . if he is sponsored by a student organization" and cited Subsection 6.71[4] of the Regents' Rules and Regulations ("Rule 6.71"). (*Id.*) Finally, the letter informed Bourgault that if he attempted to engage in speech activities on the UTA campus, the authorities would take "appropriate action in response." (*Id.*)

Bourgault filed the instant case on January 20, 2004, almost 18 months after receiving the letter from the Office of General Counsel. Along with his Verified Complaint, Bourgault also filed the instant

---

1. The parties are DIRECTED to follow Local Rule 7.1(i) regarding appendices in any future submissions to the Court.

2. Rule 6.1 reads:

   The property, buildings, or facilities owned or controlled by the U.T. System or component institutions are not open for assembly, speech, or other activities as are the public streets, sidewalks, and parks. The responsibility of the Board of Regents to operate and maintain an effective and efficient system of institutions of higher education requires that the time, place, and manner of assembly, speech, and other activities on the grounds and in the buildings and facilities of the U.T. System or component institutions be regulated. Acting pursuant to the general authority of Texas Education Code Chapter 65, and the specific authority of Texas Education Code Chapter 51, the Board of Regents adopts and promulgates this Section relating to the use of buildings, grounds, and facilities for purposes other than programs and activities related to the role and mission of the U.T. System or component institution.

3. Rule 6.2 reads:

   No person, organization, group, association, or corporation may use property, buildings, or facilities owned or controlled by the U.T. System or a component institution for any purpose other than in the course of the regular programs and activities related to the role and mission of the U.T. System or component institution, unless authorized by the Regents' Rules and Regulations. Any authorized use must be conducted in compliance with the provisions of the Regents' Rules and Regulations, the approved rules and regulations of the component institution, and applicable federal, State, and local laws and regulations.

4. Rule 6.71 reads:

   A students' association, a registered student, faculty, or staff organization, or an alumni association may not reserve or use property, buildings, or facilities owned or controlled by the U.T. System or a component institution for the purpose of engaging in any project or program with any association, organization, or corporation, or with any individual or group of individuals that are not registered.

Motion for Preliminary Injunction, asking that the Court enjoin enforcement of "the speech requirements set out in Board of Regents' Rules and Regulations for the University of Texas System and [Off–Campus Speakers] policy of the University of Texas at Arlington."[5] (Mot. at 2.)

## II. STANDARD FOR PRELIMINARY INJUNCTION

■ In the Fifth Circuit, a party is entitled to injunctive relief upon demonstrating: 1) a substantial likelihood of success on the merits of the claim; 2) a substantial threat of irreparable injury for which there is no adequate remedy at law; 3) that the threatened injury to the applicant outweighs any harm that the injunction might cause to the opponent; and 4) that the injunction will not disserve the public interest. *DSC Communications Corp. v. DGI Technologies, Inc.*, 81 F.3d 597, 600 (5th Cir.1996); *National Football League Properties v. Playoff Corp.*, 808 F.Supp. 1288, 1291 (N.D.Tex.1992). A preliminary injunction is an extraordinary remedy and should be granted only if the applicant has clearly carried the burden of persuasion with respect to all four factors. *Allied*

*Marketing Group v. CDL Marketing*, 878 F.2d 806, 809 (5th Cir.1989).

## III. ANALYSIS

In his Verified Complaint, Bourgault specifically challenges 1) the Board of Regents' Rules and Regulations of the University of Texas System "as they would act to ban [his] speech on any open area of any campus in the system, including UTA"; 2) the UTA Off–Campus Speakers policy that bans evangelism and witnessing; and 3) the UTA Off–Campus Speakers policy that requires submission of an application five days in advance of when a speaker will be speaking. (*See* Verified Compl. at 11–12.) In his Motion for Preliminary Injunction, Bourgault advances three arguments to support entry of a preliminary injunction: 1) because UTA is a public university, the public open areas on campus are traditional public fora; 2) the regulations employ viewpoint discrimination; and 3) the five day advance notice requirement eliminates spontaneous speech. Brougault contends that these three arguments establish a substantial likelihood that the Regents' Rules and Regulations and the UTA Off–Campus Speakers policy will be found unconstitu-

---

**5.** On April 22, 2002, UTA's Off–Campus Speakers policy read as follows:

One of the most common types of events sponsored by student organizations involves an off-campus speaker. This individual is either used to address group membership or the campus-at-large.

In both instances, complete a "Campus Event Information Sheet" in the Student Governance and Organizations Office at least five (5) class days prior to the event. Be sure to include as much information about the qualifications of speaker as possible. After the form is approved, take it to the person in charge of the facility you wish to reserve and complete the reservation. Some important points to remember:

1. Registered student organizations may sponsor a specific candidate for public

office. The speaker may not be co-sponsored with an off-campus interest and the audience must be limited to members of the organization or their personally invited guests.

2. Religious speakers are not to engage in evangelism, witnessing, or other religious activities. Check for mall usage with the Director of Student Governance and Organizations.

3. The speaker represents his/her own views and not those of the University.

Before Bourgault filed the instant case, UTA changed this policy. Number 2 now reads, "2. No person shall be permitted to engage in speech, either orally or in writing, which is directed to incite or produce imminent lawless action and is likely to result in such action."

tional pursuant to the First Amendment of the United States Constitution.

Defendants contend 1) that Bourgault has no standing to challenge rules and policies regulating students' speech on campus because even if enforcement of the rules and policies were to be enjoined, Bourgault would still not be allowed to speak on campus; 2) that Bourgault's challenge to the Off–Campus Speakers policy is moot because the provision restricting evangelizing and witnessing has been repealed; and 3) that Bourgault does not have a substantial likelihood of success on the merits of his challenge to the rules establishing the UTA campus as a limited public forum open only to students, faculty, and staff. The Court will address Bourgault's and Defendants' arguments below.

### A. Standing

■ First, the Court must determine whether Bourgault has standing to challenge the Regents' Rules and Regulations and the Off–Campus Speakers policy. *See United States v. Hays*, 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'"). To demonstrate standing, a plaintiff must allege facts demonstrating three elements: 1) that he suffered an injury in fact that is both concrete and particularized, and actual or imminent, not conjectural or hypothetical; 2) that there is a causal connection between the injury and the conduct complained of; and 3) that it is likely, rather than merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 743, 115 S.Ct. 2431 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

### 1. Rule 6.71

■ In the instant case, Defendants contend that Bourgault cannot prove that enjoining enforcement of Rule 6.71 would redress his injury. Defendants argue that Rule 6.71 only regulates the use of UT System "property, buildings, and facilities" by "students' associations, a registered student, faculty or staff organizations." If it were declared invalid, Defendants argue, Bourgault still would not necessarily be allowed to use UTA's property, buildings, and facilities because this rule governs the conduct of members of the UTA community and is not directed to the public. The Court agrees.

Rule 6.71 provides that a member of the UTA community cannot "reserve or use property, buildings, or facilities" of the UT System "for the purpose of engaging in any project or program with any association, organization, or corporation, or with any individual or group of individuals that are not registered." This rule merely limits who a member of the UTA community may engage for a program or project for which they wish to use UTA property. Even were the rule repealed, Bourgault would still need to obtain student sponsorship to speak on the UTA campus. (*See* Defs.' App., Exh. B (quoting Rule 6.71 in support of the proposition that Bourgault cannot speak even with student sponsorship).) Bourgault has not shown that there is a member of the UTA community who would sponsor him, such that enjoining the rule would redress his injury. Bourgault has not shown the third requirement of standing, that the remedy sought would redress the injury complained of, and does not have standing to challenge Rule 6.71. Therefore, the Court will not address Rule 6.71 in this Memorandum Opinion and Order.

### 2. Five Day Notice Requirement in UTA's Off–Campus Speakers Policy

■ Defendants also assert that Bourgault does not have standing to challenge the five day notice requirement in the UTA Off–Campus Speakers policy. The Court agrees. Bourgault has the same problem showing that an injunction of the five day notice requirement would redress his injury of not being allowed to speak on campus. The Court also notes that Bourgault has not shown that the five day notice requirement was a cause of his injury, *i.e.*, not being allowed to speak on campus. Bourgault has offered no allegation that but for the five day notice requirement, he would have been allowed to speak on the UTA campus. Because Bourgault has not alleged that the five day notice requirement was the cause of his injury, or that an injunction would redress his injury, the Court concludes that Bourgault does not have standing to challenge the five day notice requirement in the UTA Off–Campus Speakers policy. The Court need not address the five day notice requirement in this Memorandum Opinion and Order.

### 3. Former Prohibition on Evangelizing and Witnessing

Next, the Court must determine whether Bourgault can challenge the provision of the UTA Off–Campus Speakers policy which prevented religious speakers from evangelizing or witnessing. Defendants contend that because this provision was repealed before Bourgault filed this lawsuit, and because there is no plan to reimplement the challenged provision, Bourgault's challenge is moot. (*See* Defs.' App., Exh. E.) Bourgault argues that because he is asking for monetary damages, the issue is not moot. Also, he argues that Defendants have not sufficiently shown

that the challenged provision will not be "reinserted in to [sic] the policy at some later date." The Court agrees with Defendants that injunctive relief as to Bourgault's challenge of the former prohibition on evangelism and witnessing is not appropriate. The Court, however, concludes that the issue is not whether his claim is moot, but rather whether Bourgault has standing to bring the claim in the first place.

■ "A plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.,* 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Bourgault seeks two different remedies in relation to his challenge of the former prohibition on evangelizing and witnessing: monetary or nominal damages and an injunction. Bourgault meets the three requirements for standing in relation to his claim for monetary or nominal damages: he has alleged a concrete injury in fact, he has alleged his injury was caused by the prohibition on off-campus speakers' evangelizing or witnessing, and he has alleged that monetary or nominal damages would redress his injury.

■ Bourgault does not meet the three requirements for standing as to his claim for injunctive relief, however. Because the prohibition was repealed before he filed suit, an injunction "cannot conceivably remedy any past wrong." *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 108, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Also, Bourgault cannot allege the imminence of a future violation in light of Defendants' assertion that "there is no consideration being given to changing" the UTA off-campus speakers policy. (*See* Defs.' App., Exh. E.) Because Bourgault only alleges past violations, injunctive re-

lief will not remedy his injury. *See Steel Co.*, 523 U.S. at 109, 118 S.Ct. 1003. Therefore, Bourgault does not have standing to seek an injunction preventing UTA from enforcing the former prohibition on evangelizing or witnessing, and the Court need not address that former prohibition in this Memorandum Opinion and Order.

## B. Substantial Likelihood of Success on the Merits

As stated above, Bourgault challenges three specific provisions in his Verified Complaint: 1) the Board of Regents' Rules and Regulations of the University of Texas System "as they would act to ban [his] speech on any open area of any campus in the system, including UTA", including Rule 6.71; 2) the UTA Off–Campus Speakers policy that bans evangelism and witnessing; and 3) the UTA Off–Campus Speakers policy that requires submission of an application five days in advance of when a speaker will be speaking. (*See* Verified Compl. at 11–12.)

Because the Court has concluded that Bourgault lacks standing to challenge Rule 6.71 and the two provisions in the Off–Campus Speakers policy on evangelizing and witnessing and the five day notice requirement, the Court need only address Bourgault's challenge to the Rules and Regulations reserving the UTA campus for speech by members of the UTA community. Two of the arguments Bourgault advances in his Motion for Preliminary Injunction are still relevant: 1) because UTA is a public university, the public open areas on campus are traditional public forums; and 2) the regulations employ viewpoint

discrimination. The Court will address these arguments below.

### 1. Forum Analysis

Bourgault argues that because UTA is a public university, and because it has streets, sidewalks, parks, and pedestrian malls, it is a traditional public forum. Defendants argue that Bourgault can cite no case holding that a public university campus is a traditional public forum, and thus he cannot demonstrate a substantial likelihood of success on the merits.

The "First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) (citing *United States Postal Serv. v. Greenburgh Civic Ass'n*, 453 U.S. 114, 129, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981)). It is well settled that "[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.* This means that a "speaker's right to access government property is determined by the nature of the property or 'forum'" created by the government. *Hays County Guardian v. Supple*, 969 F.2d 111, 116 (1992) (citing *Perry Educ. Ass'n*, 460 U.S. at 37, 103 S.Ct. 948). The Fifth Circuit has defined four different types of forums: traditional public forums, designated public forums, limited public forums, and nonpublic forums.[6] *See Chiu v. Plano Indep. School Dist.*, 260 F.3d 330, 346–47 (5th Cir.2001). *See also Perry Educ. Ass'n*, 460 U.S. at 45, 103 S.Ct. 948.

---

**6.** As recognized in *Chiu,* "there is some confusion over the terminology used to describe" the middle category (or categories) between traditional and nonpublic forums. *See Chiu,* 260 F.3d at 345–46. The Fifth Circuit established in *Chiu,* however, that there are essentially four types of forums, and that different levels of scrutiny apply to the restriction being challenged, depending on the type of forum the government created. *See id.*

In the instant case, Bourgault argues that because UTA has streets, sidewalks, parks, and pedestrian malls, it is a traditional public forum. "Government property is a 'traditional public forum' if the property has traditionally been used by the public for purposes of assembly and debate," like streets, sidewalks, parks, and pedestrian malls. *Hays County Guardian*, 969 F.2d at 116. However, "[t]he mere physical characteristics of the property cannot dictate forum analysis." *United States v. Kokinda*, 497 U.S. 720, 727, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990). For example, the Supreme Court found in *Greer v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976), that a military base that permitted free civilian access and contained streets and sidewalks was not a traditional public forum.

Defendants are correct that Bourgault has not cited any case standing for the proposition that a university campus is a traditional public forum. It is true that the Supreme Court has recognized that a public university campus "possesses many of the characteristics of a public forum." *See Widmar v. Vincent*, 454 U.S. 263, 274 n. 5, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). The Court in *Widmar* qualified its observation, however, as applying only to the university's students. *Id.* ("This Court has recognized that the campus of a public university, at least for its students, possesses many of the characteristics of a public forum.") Additionally, the Court observed that "[a] university differs in significant respects from public forums" and acknowledged that the Court has "never denied a university's authority to impose reasonable regulations compatible with [its mission of education] upon the use of its campus and facilities." *Id.* The Court continued, "We have not held, for example, that a campus must make all of its facilities equally available to students and non-students alike, or that a university must grant free access to all of its grounds or buildings." *Id.*

The Fifth Circuit has also never held that a public university campus is a traditional public forum. In *Brister v. Faulkner*, 214 F.3d 675 (2000), the Fifth Circuit held that the paved sidewalk area between the public entrance to the University of Texas at Austin's Erwin Center and Red River Street is a traditional public forum. *See Brister*, 214 F.3d at 681. The Court limited its holding, however, to the specific property at issue. *See id.* at 683 n. 5 ("This holding applies only to the specific property at issue on Red River Street and is not to be interpreted to apply to any other property around the perimeter of the Erwin Center or elsewhere, about which we express no opinion."). The Court's holding in *Brister* was based on the particular fact that this area was "indistinguishable from the Austin city sidewalk." *Id.* at 683. In the instant case, Bourgault has not alleged that the streets, sidewalks, parks, or pedestrian malls on the UTA campus are indistinguishable from the City of Arlington's streets, sidewalks, parks, and pedestrian areas.

■ Given the Supreme Court's reasoning in *Widmar*, and the Fifth Circuit's limited holding in *Brister*, and the fact that no court has found a university's campus to be a traditional public forum, the Court concludes that Bourgault has not demonstrated a likelihood of success on his argument that the UTA campus is a traditional public forum. This means that the UTA campus must be one of the other types of forums: a designated public forum, a limited public forum, or a non-public forum. *See Chiu*, 260 F.3d at 346. In distinguishing between designated public forum and limited public forum, courts in the Fifth Circuit look to two factors: "1) the government's intent with respect to the forum,

and 2) the nature of the [forum] and its compatibility with the speech at issue." *Id.* (internal quotations omitted). The Fifth Circuit's reasoning in *Chiu* shows that a designated public forum is one where the government has opened up a nonpublic forum to the public generally, to facilitate discussion on issues of public concern. *Id.* at 346–47. A limited public forum is one where the government has only opened up a nonpublic forum to either a specific group of speakers or for discussion on a very narrow topic. *Id.*

The UT System Rules do not open up any of its property to the general public. *See* Rule 6.1. It appears that UTA has only opened up its property for the use of members of the UTA community. *See* Rule 6.2 and 6.7. Under the analysis described in *Chiu,* this would make the property at issue in the instant case a limited public forum. *See Chiu,* 260 F.3d at 347. In a limited public forum, "the restriction must not discriminate against speech on the basis of viewpoint, . . . and the restriction must be 'reasonable in light of the purpose served by the forum.'" *Good News Club v. Milford Cent. School,* 533 U.S. 98, 106–07, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001). *See also Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 828–29, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."). The Court will evaluate the UT System's restriction of its property to members of the UT System community using these two factors—viewpoint discrimination and reasonableness—below.

### 2. Viewpoint Discrimination

■ In his Motion for Preliminary Injunction, Bourgault argues that the restriction against evangelizing and witnessing is viewpoint discrimination. While the Court agrees that this appears to be viewpoint discrimination, as discussed above, Bourgault does not have standing to bring this claim in this motion. In his Reply Brief, Bourgault also argues that the requirement that off-campus speakers be sponsored by student organizations amounts to viewpoint discrimination. (*See* Reply at 17–19.) The Court disagrees.

Bourgault's argument is premised on his claim that if a student group disagrees with a speaker's viewpoint, they will not sponsor him. Bourgault's premise does not rise to impermissible viewpoint discrimination. Bourgault has not offered any evidence, or even an allegation, that the student sponsorship requirement is facial viewpoint discrimination. The Rules and Regulations allow registered student groups and other members of the UTA community the use of UTA buildings and property for speech purposes. The condition of being a registered student group or a member of the UTA community has no viewpoint associated with it. Therefore, the requirement that a speaker be a member of the UTA community cannot be facial viewpoint discrimination.

Additionally, Bourgault has offered no evidence or allegation that UTA discriminates based on viewpoint when allowing student groups to register or in permitting people to become members of the UTA community. Bourgault's argument implies that he would not be able to secure student sponsorship because no student organization would agree with his views. Even if this were true, there is no evidence or allegation that UTA does not permit student groups that hold views similar to Bourgault's views. There is no evidence or allegation that student organizations are only permitted by UTA if they hold certain beliefs, or that students would be prohibited from forming organizations because of

their viewpoint on a particular topic. There is no reason for the Court to believe that students at UTA cannot form an organization regardless of their viewpoints.

Bourgault offers no evidence to suggest that the limitation requiring speakers to be members of the UTA community is viewpoint discrimination. The Court concludes that Bourgault does not have a likelihood of success on his argument that the restriction limiting the campus forum to members of the UTA community is impermissible viewpoint discrimination.

### 3. Reasonable Restriction

The Court must next determine whether the restriction limiting the campus forum to members of the UTA community is reasonable in light of the purpose served by the forum. Bourgault makes no argument, except for his argument that the UTA campus is a traditional public forum, that limiting the UTA campus to UTA students is unreasonable given the fact that it is a university. The Court concludes that Bourgault does not have a likelihood of success on any argument that the restriction of the UTA campus to members of the UTA community is unreasonable in light of the purpose of the forum.

### IV. CONCLUSION

The Court concludes that Bourgault has not demonstrated a likelihood of success on the merits of his argument that prohibiting him from speaking on campus is unconstitutional pursuant to the First Amendment's free speech guarantee. Accordingly, Bourgault has failed to prove the first requirement necessary for the Court to enter a preliminary injunction. The Court need not evaluate the other requirements for entry of a preliminary injunction.

For the reasons stated above, Plaintiff's Motion for Preliminary Injunction is **DENIED.**

This case remains set for non-jury trial on the Court's December 2004 docket.

SO ORDERED.