**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RESURRECTION BAY CONSERVATION
ALLIANCE; ALASKA COMMUNITY
ACTION ON TOXICS, Alaska
nonprofit corporations,
          *Plaintiffs-Appellants,*

          v.

CITY OF SEWARD, ALASKA,
          *Defendant-Appellee.*

No. 10-35446

D.C. No.
3:06-cv-00224-RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, Chief District Judge, Presiding

Argued and Submitted
May 3, 2011—Anchorage, Alaska

Filed May 19, 2011

Before: Arthur L. Alarcón, Susan P. Graber, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Alarcón

**COUNSEL**

Victoria Clark, Trustees for Alaska, Anchorage, Alaska, for the plaintiffs-appellants.

Cheryl Brooking (argued) and Leila Kimbrell, Wohlforth, Johnson, Brecht, Cartledge & Brooking, Anchorage, Alaska, for the defendant-appellee.

**OPINION**

ALARCÓN, Circuit Judge:

The issue presented by this appeal is whether the district court abused its discretion in denying an award of attorney fees to Resurrection Bay Conservation Alliance, an Alaska nonprofit corporation, and Alaska Community Action on Toxics, an Alaska nonprofit corporation (collectively "RBCA") pursuant to section 505(d) of the Clean Water Act ("CWA"), 33 U.S.C. § 1365(d), because RBCA came within the "special circumstances" standard first elaborated in *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) (per curiam). We conclude that the district court abused its discretion in ruling that special circumstances were demonstrated, and we remand with instructions that it award that portion of RBCA's fees and costs reasonably incurred in furtherance of the CWA's purpose.

**I**

**A**

On September 22, 2006, RBCA filed a citizen enforcement suit alleging that the City of Seward ("the City") was discharging toxic pollutants from the Seward Small Boat Harbor ("Small Boat Harbor") and a boat repair yard, the Seward

Marine Industrial Center ("SMIC"), into Resurrection Bay in violation of the CWA, 33 U.S.C. § 1251 *et seq.*[1] RBCA sought a declaration that the City had violated and was violating the CWA by discharging pollutants without a National Pollution Discharge Elimination System ("NPDES") permit from both the Small Boat Harbor and the SMIC,[2] temporary and permanent injunctions prohibiting the City from discharging pollutants from its facilities without an NPDES permit, temporary and permanent injunctions requiring the City to restore waters damaged by its illegal discharges of pollutants, civil penalties for the violations, and an award of RBCA's fees and costs as authorized by the CWA. RBCA's request for civil penalties included $27,500 per day per violation for violations occurring between April 18, 2001, and March 14, 2004, and $32,500 per day per violation for violations occurring after March 15, 2004.

On June 27, 2007, RBCA and the City filed cross-motions for summary judgment. The district court granted partial summary judgment in favor of RBCA and denied the City's motion for summary judgment. It held that, for purposes of the CWA, the City is an operator of industrial facilities that discharges stormwater into waters of the United States.

---

[1]The statute defines "pollutant" to mean "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

[2]As this Court has explained, the NPDES permit requirement includes stormwater discharges from industrial sites:

> In 1987, to better regulate pollution conveyed by stormwater runoff, Congress enacted Clean Water Act § 402(p), 33 U.S.C. § 1342(p), "Municipal and Industrial Stormwater Discharges." Sections 402(p)(2) and 402(p)(3) mandate NPDES permits for stormwater discharges "associated with industrial activity," discharges from large and medium-sized municipal storm sewer systems, and certain other discharges.

*Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 841 (9th Cir. 2003).

Accordingly, it is required to apply for an NPDES permit. The district court ordered the City to apply for an NPDES permit for both the Small Boat Harbor and the SMIC. The district court declined, however, to award civil penalties for violations of the CWA, and directed each party to bear its own fees and costs.

RBCA filed a motion to amend the judgment. It challenged the denial of civil penalties and the refusal to award fees and costs. The City filed a motion to amend findings, in which it requested that the district court correct or amend its finding that vessel repair and maintenance activities occur at the Small Boat Harbor facility. The district court granted RBCA's motion in part, noting that it had erred in failing to assess any civil penalty after concluding that an NPDES permit was required. The district court assessed a nominal civil penalty of $1, but declined to permit briefing on the issue of an award of litigation costs. In the same order, the district court denied the City's motion to amend findings, explaining that the evidence at summary judgment referred to both the SMIC and the Small Boat Harbor.

**B**

The parties filed cross appeals to this Court. While the cross-appeals were pending, the EPA issued a letter dated September 30, 2008, stating that, on May 8, 2008, the EPA had inspected the Small Boat Harbor and did not observe any industrial activity at the site. The EPA concluded that the City need not obtain an NPDES permit for the Small Boat Harbor.

On October 13, 2009, this Court issued a memorandum disposition in which it remanded this matter to the district court with instructions to determine: (1) whether RBCA is a prevailing party and, if so, whether an award of attorney fees is appropriate under *Saint John's Organic Farm v. Gem County Mosquito Abatement District*, 574 F.3d 1054 (9th Cir. 2009); and (2) "whether to vacate its summary judgment ruling with

respect to the permit requirement for the Small Boat Harbor." *Resurrection Bay Conservation Alliance v. City of Seward*, 334 F. App'x 106, 107 (9th Cir. 2009) (unpublished).

## C

In an order dated April 13, 2010, the district court acknowledged the EPA's determination that an NPDES permit was not required for the Small Boat Harbor and vacated that portion of its order. Additionally, the district court concluded that RBCA was a prevailing party because, although the EPA declined to issue a permit for the Small Boat Harbor, the district court had ordered the City to apply for a permit for both locations and to pay a nominal civil penalty. The district court concluded, however, that an award of fees would be unjust because special circumstances existed, explaining:

> Previously, this Court found that although there was a legal basis for [RBCA's] claim, and the Court ultimately ordered the City to apply for an NPDES permit, the Court declined to grant in full the relief sought by Plaintiffs. The City successfully avoided potential liability exceeding $76 million, and because the City had no clear reason to believe it must apply for an NPDES permit, the Court could not conclude that it would be appropriate to assess the costs requested.

> While *Saint John's* did not define "special circumstances," it did note that "a defendant's good faith belief that it was following the law does not qualify as a 'special circumstance.' " [574 F.3d at 1064.] However, the Court still concludes that special circumstances exist in this matter. Specifically, despite the Court's findings and a Judgment requiring the City to seek a permit from the EPA, the EPA ultimately declined to issue a permit for one of two locations, thus casting doubt on the Court's reason-

ing in its prior order. At best, [RBCA] prevailed on only a small portion of their case.

Furthermore, as the Court reasoned previously, there was a lack of evidence of actual pollution and a lack of evidence of an economic benefit by the City. As detailed in the Opposition to the Motion for Attorney Fees at Docket 107, [RBCA] sought relief that was not granted by the Court. Ultimately, the City has not changed any behavior that existed prior to the lawsuit. All that was accomplished was the application for and issuance of one permit to allow activities that were legitimately taking place. Finally, the Court notes that if the EPA had issued an advisory opinion when the City originally requested it, this litigation could have been avoided completely.

The Court accordingly finds that this case has unique and "special circumstances" and an award of attorney fees in these circumstances would be unjust.

Apr. 13, 2010 Order at 9-10 (footnotes omitted). The district court denied RBCA's motion for attorney fees and litigation costs.

On May 12, 2010, RBCA filed an appeal from the district court's order on remand. The district court had jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over RBCA's timely appeal pursuant to 28 U.S.C. § 1291.

## II

RBCA asks this Court to hold that the district court erred in denying it an award of attorney fees, vacate the portions of the district court's judgment and subsequent orders that decline to award fees, and award reasonable attorney fees in this case. The City counters that the district court set forth myriad factual findings that, viewed together, support its deci-

sion that special circumstances preclude an award of attorney fees in this case.

We review a district court's denial of an award of attorney fees for abuse of discretion. *Saint John's*, 574 F.3d at 1058. "Under this standard, we review the district court's factual findings for clear error and review de novo its legal analysis." *Id.* "A district court abuses its discretion if its decision is based on an erroneous conclusion of law or if the record contains no evidence on which it rationally could have based its decision." *Ass'n of Cal. Water Agencies v. Evans*, 386 F.3d 879, 883 (9th Cir. 2004).

**A**

**[1]** A district court's decision to award attorney fees under section 505(d) of the CWA must rest on two findings.**³** *Saint John's*, 574 F.3d at 1058. "First, [the court] must find that the fee applicant is a 'prevailing or substantially prevailing party.' Second, it must find that an award of attorney fees is 'appropriate.' " *Id*. An award of attorney fees may not be appropriate where "special circumstances" are found. *Id.* at 1063. Here, the district court determined that RBCA is a prevailing party. The City has not appealed that determination. Thus, the sole issue before this court is whether the district court erred in concluding that an award of fees to RBCA was not appropriate because special circumstances exist in this case.

In *Saint John's*, we considered the standard to be applied when a district court determines whether an award of attorney fees to a prevailing party is "appropriate" under section

---

**³**The Clean Water Act states that "in issuing any final order in any action brought pursuant to this section, [a court] may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d) (codifying section 505(d) of the Clean Water Act).

505(d) of the CWA. *Id.* at 1061. We applied the "special circumstances" standard first set out by the Supreme Court in *Piggie Park*. We explained that "[w]e have interpreted the 'special circumstances' standard of *Piggie Park* quite strictly, such that fee awards 'should be the rule rather than the exception.' "[4] *Saint John's*, 574 F.3d at 1062 (quoting *Ackerley Commc'ns*, *Inc. v. City of Salem*, 752 F.2d 1394, 1396 (9th Cir. 1985)). We elaborated as follows:

> "[A] [district] court's discretion to deny a fee award to a prevailing plaintiff is narrow," *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 68 (1980), and a denial of fees on the basis of "special circumstances" is "extremely rare." *Borunda v. Richmond*, 885 F.2d 1384, 1392 (9th Cir. 1988) (internal quotation marks and citations omitted). A defendant's good faith belief that it was following the law does not qualify as a "special circumstance." *Teitelbaum v. Sorenson*, 648 F.2d 1248, 1250-51 (9th Cir. 1981).

*Id.* at 1063-64 (footnote omitted).

Citing *St. John's*, 574 F.3d at 1064, the district court acknowledged that the City's good faith belief that it did not need a permit did not constitute a special circumstance that would support a denial of fees. The district court also "note[d] that if the EPA had issued an advisory opinion when the City

---

[4]In *Piggie Park*, the Supreme Court considered a request for attorney's fees under Title II of the Civil Rights Act of 1964" and held that " 'one who succeeds in obtaining an injunction under [Title II] should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " *Saint John's*, 574 F.3d at 1062 (alteration in original) (quoting *Piggie Park*, 390 U.S. at 402). As this court noted, the Supreme Court reasoned that a plaintiff bringing suit under Title II of the Civil Rights Act could not recover damages and, if able to obtain an injunction, that plaintiff "d[id] so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Id.* (quoting *Piggie Park*, 390 U.S. at 402).

originally requested it, this litigation could have been avoided completely," but it is not clear to what extent this consideration weighed in the district court's determination that special circumstances exist in this case. We are persuaded, however, that the district court did not consider relevant factors and, as a result, misapplied the law regarding special circumstances to the facts of this case. *See Ackerley Commc'ns*, 752 F.2d at 1396 ("A determination by the district court will be reversed 'where the district court misperceives the law or does not consider relevant factors and thereby misapplies the law.' " (quoting *City of Long Beach v. Standard Oil Co. of Cal.* (*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*), 658 F.2d 1355, 1358 (9th Cir. 1981))). The district court did not have the benefit of well-developed precedent because this case was remanded with instructions to apply the "special circumstances" standard just two months after we decided *Saint John's*.

Given this circuit's narrow interpretation of the "special circumstances" standard, examples of considerations that do *not* rise to the level of special circumstances are more prevalent than examples of considerations that do. For example, in *Ackerley Communications*, this court concluded that the district court erred in determining that the following were "special circumstances": a party's "financial interest in the outcome of litigation"; the fact that the plaintiff would have retained competent counsel without the prospect of an attorney fee award; the fact that the plaintiff would be the primary beneficiary of its own success in the litigation; and the fact that the defendant had not anticipated being required to pay an attorney fee award. 752 F.2d at 1396-98. However, in *Borunda v. Richmond*, 885 F.2d 1384 (9th Cir. 1988), we explained that, although the special circumstances standard articulated in *Piggie Park* "severely limit[s] [a district court's] exercise of [its] discretion," special circumstances support the denial of attorney fees on appeal in cases in which a prevailing plaintiff "fail[s] to adequately brief the issues he present[s], thereby requiring the court to engage in independent

research." *Id.* at 1392 (citing *Bateson v. Geisse*, 857 F.2d 1300, 1306 (9th Cir. 1988)); *see also, e.g., Tyler v. Corner Constr. Corp., Inc.*, 167 F.3d 1202, 1206 (8th Cir. 1999) (concluding that a nuisance settlement, a settlement "that is accepted despite the fact that the case against the defendant is frivolous or groundless, solely in an effort to avoid the expense of litigation," represents a special circumstance); *Stewart v. Donges*, 979 F.2d 179, 184-85 (10th Cir. 1992) (finding special circumstances prohibited an award of attorney fees where the plaintiff was responsible for the case proceeding to trial even though "it was clear at the time that the [defendant's] filing of the Notice of Appeal on the issue of qualified immunity [had] automatically divested the district court of jurisdiction"); *Lewis v. Kendrick*, 944 F.2d 949, 956-58 (1st Cir. 1991) (denying a fee award to a plaintiff who failed to make a good faith effort to tailor her fee request to reflect that she had been "strikingly unsuccessful" at trial and had lacked evidentiary support for many of her claims arising out of a routine but wrongful street arrest); *Robins v. Harum*, 773 F.2d 1004, 1011 (9th Cir. 1985) (denying attorney fees on appeal where "this court was required to engage in independent research on the Fourth Amendment issue, which was not adequately briefed or presented by counsel at oral argument").

Here, the district court identified the following special circumstances that it believed rendered the requested attorney fee award unjust: (1) RBCA was not granted the full relief it sought, i.e., it requested up to $76 million in civil penalties but received only a nominal award of $1, and the City was required to obtain a permit for only one of two locations identified by RBCA; (2) there was a lack of evidence of actual pollution; (3) there was a lack of evidence of an economic benefit by the City; and (4) the City had not changed any behavior that existed prior to the lawsuit because the City was merely required to apply for, and be issued, a permit that permitted it to engage in activities in which it was already engaged. We conclude that these factors are not special circumstances that would preclude an award of attorney fees.

*See Saint John's*, 574 F.3d at 1062 ("We have interpreted the 'special circumstances' standard of *Piggie Park* quite strictly, such that fee awards 'should be the rule rather than the exception.' " (quoting *Ackerley Commc'ns*, 752 F.2d at 1396)).

**[2]** First, the district court's analysis misperceives the importance of the CWA's permit requirements and the relief obtained by RBCA. The stated objective of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). As this court stated in *Saint John's*, "[t]he CWA *achieves this goal* by forbidding or minimizing pollution *through the NPDES permitting process*." 574 F.3d at 1061 (emphases added). Similarly, as this court explained in *Russian River Watershed Protection Committee v. City of Santa Rosa*, 142 F.3d 1136, 1138 (9th Cir. 1998):

> The Clean Water Act regulates the discharge of pollutants into navigable waters, prohibiting their discharge unless certain statutory exceptions apply. 33 U.S.C. § 1311(a). One such exception is where the polluter has been issued an NPDES permit. 33 U.S.C. § 1342. The effluent discharge standards or limitations specified in an NPDES permit define the scope of the authorized exception to the prohibition in section 1311(a).

The CWA's implementing regulations require "[d]ischargers of storm water associated with industrial activity and with small construction activity . . . to apply for an individual permit or seek coverage under a promulgated storm water general permit." 40 C.F.R. § 122.26(c)(1). The regulations require permit applicants to provide extensive documentation, including: site maps showing topography, including drainage and discharge structures; estimates of impervious surfaces and descriptions of "[s]ignificant materials that in the three years prior to the submittal of th[e] application have been treated, stored or disposed in a manner to allow exposure

to storm water" and "method of treatment, storage or disposal of such materials"; "[a] certification that all outfalls that should contain storm water discharges associated with industrial activity have been tested or evaluated for the presence of non-storm water discharges which are not covered by a NPDES permit"; and "[e]xisting information regarding significant leaks or spills of toxic or hazardous pollutants at the facility that have taken place within the three years prior to the submittal of th[e] application." 40 C.F.R. § 122.26(c)(1)(i)(A)-(D).

**[3]** Second, although the CWA also forbids pollution, neither the district court nor the City has identified any basis in law for the proposition that the absence of evidence of actual pollution was dispositive. Nothing in the statute requires a plaintiff to wait until *after* pollution has occurred or is underway in order to bring a citizens' enforcement suit for violation of the CWA's permit requirements.

**[4]** Third, neither the district court nor the City has identified any basis in law for the notion that a special circumstances determination can or should be supported by a finding that the City benefitted economically by failing to apply for and obtain an NPDES permit.

**[5]** Fourth, the district court's analysis focused solely on whether the City was forced to cease polluting or potentially polluting activities in which it had previously been engaged. This emphasis fails to appreciate that the statute requires compliance with the process of applying for and obtaining a permit, and it conflicts with the violation the district court had previously identified. In its order regarding the parties' cross-motions for summary judgment, the district court expressly found that, for purposes of the CWA, the City is an operator of industrial facilities that discharge stormwater into waters of the United States, and therefore, the City is required to apply for an NPDES permit. The fact that the City was obliged, as

a result of RBCA's suit, to submit to the permitting process for one of the two locations, effected a change in its behavior.

**[6]** The district court's perception that RBCA's victory was so insignificant as to constitute a special circumstance to deny any award of attorney fees misapprehended the role of the CWA's permit requirements in furthering the statute's purpose, which includes an objective "to restore *and maintain* the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a) (emphasis added). As a result, the district court's order also fails to demonstrate that it properly engaged in a balancing of the equities that favored the denial of fees. Accordingly, we hold that the district court abused its discretion in concluding that "special circumstances" supported its denial of an award of attorney fees.

**B**

RBCA seeks an award of fees in the amount of $119,566.50 and costs in the amount of $4,790.80, for a total award of $124,357.30, and asks that this court award the full amount requested because it was not disputed on substantive grounds at the district court. The City argues that it has opposed and continues to oppose the entire award sought by RBCA.

" '[T]he determination of attorney fees is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion.' " *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1065 (9th Cir. 2006) (quoting *Zuniga v. United Can Co.*, 812 F.2d 443, 454 (9th Cir. 1987)). When there is "a complete absence of any showing of special circumstances to render [the award of an attorney's fee] unjust," a district court must award a reasonable fee. *Ackerley Commc'ns*, 752 F.2d at 1398 (alterations in original) (internal quotation marks omitted). As this Court has explained, the usual approach to evaluating the reasonableness of an attorney fee award requires application of the lodestar method and

*Kerr* factors.**⁵** *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). In *Farrar v. Hobby*, 506 U.S. 103 (1992), the Supreme Court stated that " 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Id.* at 114 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

Here, the district court concluded that an award of attorney fees would be unjust in this case. Therefore, it did not consider the reasonableness of the fees requested by RBCA. Although the City has not taken a position on the reasonableness of the amount of fees requested and, instead, has taken an "all or nothing" approach to a fee award, we conclude that the district court should determine the reasonableness of the fees requested in the first instance. Because we have determined that an award of reasonable attorney fees is warranted, we encourage the parties to consider mediation to avoid incurring additional attorney fees in this protracted litigation.

---

**⁵**In *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), the Ninth Circuit adopted from the Fifth Circuit the following factors to be considered in the balancing process required in a determination of the reasonableness of attorney fees:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* The Supreme Court has since called the relevance of two of the original *Kerr* factors into question. *See Davis v. City of San Francisco*, 976 F.2d 1536, 1546 n.4 (9th Cir. 1992) (noting that the Supreme Court has deemed irrelevant to a § 1988 attorney fees claim the fixed or contingent nature of the fee and has cast "doubt on the relevance of a case's 'desirability' to the fee calculation"), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993) (order).

## CONCLUSION

**[7]** The district court's denial of an award of attorney fees and litigation costs is VACATED, and this matter is REMANDED to the district court with instructions to award RBCA's fees and costs that were reasonably incurred in furtherance of the Clean Water Act's purpose.

Costs on appeal awarded to Plaintiffs-Appellants.