# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50916

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2014

Lyle W. Cayce
Clerk

RODOLFO SANCHEZ; KRISTOPHER SLEEMAN,

      Plaintiffs - Appellants

v.

CITY OF AUSTIN,

      Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before KING, GRAVES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Beginning in October 2011, Plaintiffs-Appellants Rodolfo Sanchez and Kristopher Sleeman participated in the Occupy Wall Street protests that took place in the plaza in front of Austin City Hall. After the protests had already started, Defendant-Appellee City of Austin promulgated a policy under which it issued criminal-trespass notices—oral or written notices that individuals must depart or must not enter city property—to Appellants and other protestors. Appellants sued the City in district court, alleging facial and as-applied challenges to the City's policy under the First and Fourteenth Amendments. Appellants sought declaratory and injunctive relief and damages. At the district court's request, the case proceeded to a bench trial

No. 13-50916

merely one month after Appellants filed their complaint. Nine months later, the district court entered an order declaring the City's policy unconstitutional on its face and enjoining the City from issuing criminal-trespass notices under the policy. The district court, however, denied Appellants' motion for attorneys' fees and expenses under 42 U.S.C. § 1988, even though Appellants had prevailed on their constitutional challenge. Appellants timely appealed this denial. We now REVERSE the district court's denial of fees and REMAND for the district court to determine the amount of the award.

## FACTS AND PROCEEDINGS

On October 6, 2011, at the inception of the Occupy Wall Street protests in Austin, Sanchez and Sleeman joined the protests that convened at the plaza in front of Austin City Hall. On October 30, 2011, there was a large protest in the plaza. Police officers arrested Sanchez and Sleeman and issued both of them a verbal criminal-trespass notice ("CTN"), informing Sleeman that he was banned from City Hall for one year, Sanchez that he was banned for two years, and both that they would be arrested if they returned.

On November 1, 2011—two days after Appellants received their CTNs— the City formalized the CTN procedure by issuing an Administrative Bulletin entitled "Criminal Trespass Notices on City Property" ("the policy"). The policy defined a CTN as: "[An] oral or written communication to a person that: A. Entering by that person onto City Property is forbidden; or B. The person must immediately depart from City Property." The policy defined "City Property" to include the City Hall building and surrounding property. With some exceptions, the policy stated that the City would ordinarily warn individuals before giving them CTNs. And the policy further guaranteed that anyone who received a CTN would have the opportunity for prompt administrative review. This review process, however, was only available after a person received a CTN—in other words, there was no possibility of pre-deprivation review—and

No. 13-50916

if a CTN recipient failed to seek review within thirty days of receiving the notice, the CTN became final and unreviewable except upon a good-cause showing. A request for review would not stay or suspend the CTN.

On November 21, 2011, Appellants filed suit under 42 U.S.C. § 1983 against the City and several City officials, alleging that the policy, both facially and as applied, violated the First Amendment and due-process rights of Appellants, other Occupy Austin protestors, and all citizens of Austin who used the plaza as a forum for free expression. Appellants alleged further that the policy was overbroad and vague and that the City enacted the policy to retaliate against the Occupy Austin protestors, in violation of their First Amendment rights. Appellants sought declaratory relief; injunctive relief; attorneys' fees, expenses, and costs; and damages. Appellants also applied for a temporary restraining order ("TRO") to enjoin the City from issuing CTNs, and from enforcing CTNs already issued.

Instead of resolving Appellants' TRO application, the district court asked the parties to consider whether it would be feasible for the court to expedite a trial on the merits so that it could resolve the lawsuit quickly and conclusively. The parties ultimately agreed to proceed to a trial on the merits that would start exactly one month after Appellants filed their complaint in the district court. Because they were going to trial so quickly, Appellants withdrew their application for a TRO.

Meanwhile, the City agreed to expedite Appellants' prior requests for administrative review of the CTNs that the City had issued to them. At that review, without any hearing or presentation of evidence by Appellants' counsel, the City modified both CTNs so that both Sleeman's and Sanchez's bans from the plaza expired on November 21, 2011, the day that they filed their suit in the district court. Having exhausted their administrative remedies under the City's policy, Appellants then amended their complaint to include claims that

3

No. 13-50916

the City had denied them due process of law under the Fourteenth Amendment.

On December 21 and 22, 2011, the district court conducted a bench trial. In addition to Sanchez, three other witnesses testified. At the conclusion of the trial, the district court explained that it was not prepared to rule on Appellants' request for a preliminary injunction and instead would "write an opinion that disposes all of the issues" and "get [an opinion] out as quickly as" it could. While the district court had the case under consideration, however, the City began to enforce two new policies at City Hall: first, a curfew that prohibited use of the plaza between 10 p.m. and 6 a.m., and second, a requirement that groups using the plaza first make a reservation with the City.[1] As a result of these new policies, the City cleared the Occupy Austin protestors from the plaza on February 3, 2012, and the Occupy Austin protest at City Hall came to an end.

On September 27, 2012—nine months after the conclusion of the bench trial—the district court entered an order declaring the City's CTN policy unconstitutional on its face and enjoining the City from issuing CTNs under the policy. Merits Order at 1, 18. The district court found that the policy was a content-neutral time, place, and manner restriction on protected speech in a traditional public forum and that the policy failed intermediate scrutiny because it did not leave open adequate alternative avenues for communication. *Id.* at 10–14. The district court found further that the policy's administrative-review process violated Appellants' due-process rights because the post-

---

[1] There appears to be no evidence in the record of the City's issuance of these new rules beyond the district court's statements in its findings of fact and conclusions of law. In its order enjoining the CTN policy, however, the district court stated that it had considered "the parties' post-trial letters." *Sanchez v. City of Austin*, No. 1:11-cv-00993-LY, slip op. at 1 (W.D. Tex. Sept. 27, 2012), ECF No. 67 [hereinafter Merits Order]. The City asserts that "[t]he City's new policy is in the record," but its only citation for that proposition is to the City's own response in opposition to Appellants' motion for fees.

deprivation nature of the review created a high risk of erroneous deprivation of Appellants' First Amendment rights. *Id.* at 17–18. The district court entered final judgment in Appellants' favor, declaring the policy facially unconstitutional, ordering a permanent injunction against its enforcement, and awarding all costs to Appellants, but denying all other requested relief, including Appellants' requested nominal damages. The City did not appeal the district court's merits ruling.

Following the district court's order and final judgment, Appellants moved for attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, arguing that the relief they obtained was sufficient to render them prevailing parties and that their fees were reasonable and necessary given the expedited timeline of the bench trial, as well as the skill and experience level of their attorneys. The City opposed an award of fees and asserted that a fee award would be unjust because of special circumstances. In particular, the City argued that because the City had not yet formalized its CTN policy when Appellants received their CTNs, Appellants' injuries were not caused by the City's policy and the City therefore could not be liable under the *Monell* theory of liability.[2] The City likewise argued that Appellants were not prevailing parties because they had failed to show that their constitutional rights had been violated by the policy and therefore also had failed to show that the relief that the district court ordered had altered the legal relationship between the parties. Next, the City asserted that Appellants had filed suit knowing that the only potential

---

[2] The City also moved to alter or amend the judgment on the same basis. The district court denied the motion, concluding that "it is beyond question that the City had and enforced the criminal-trespass policy set forth in Administrative Bulletin 11-04, *Criminal Trespass Notices on City Property*, even though the policy was not reduced to writing until two days after Plaintiffs were arrested and received verbal criminal-trespass notices. The City clearly subjected Plaintiffs to the policy." *Sanchez v. City of Austin*, No. 1:11-cv-00993-LY, slip op. at 2 (W.D. Tex. Feb. 4, 2013), ECF No. 81 [hereinafter Post-Trial Order]. Again, as with the district court's merits ruling, the City did not appeal the denial of this motion.

recovery could be for their attorneys, whose requested fees bordered on "shocking the conscious [sic]." Finally, the City argued in the alternative that if the district court did award fees, the amount of the award sought should be reduced because it was unreasonable.

The district court ultimately found as a matter of law that Appellants were prevailing parties because they obtained a declaratory judgment and injunction. *Sanchez v. City of Austin*, No. 1:11-cv-00993-LY, slip op. at 3 (W.D. Tex. Sept. 3, 2013), ECF No. 86 [hereinafter Fee Order]. Despite this conclusion, the district court denied Appellants' request for attorneys' fees. *Id.* First, the district court noted that Appellants' CTNs had been modified and no longer restricted their access to City Hall. *Id.* The court also recognized that the Occupy Austin protest had ended before the court had entered final judgment in the lawsuit. *Id.* Finally, the district court also took notice of the City's new curfew and reservation rules and concluded, as a result, that the CTN policy "was no longer in effect." *Id.* In sum, the district court reasoned that "the court's order enjoining the enforcement of the City's policy had little or no effect, due to the fact that Plaintiffs were no longer subject to the criminal-trespass notices that they had been issued and that the City's policy was no longer in effect." *Id.* The court therefore denied Appellants' fee motion, ultimately concluding that "special circumstances in this case render an award [of] attorney's fees to the prevailing parties unjust." *Id.* at 4. Appellants timely filed a notice of appeal.

## STANDARD OF REVIEW

"We review a denial of § 1988 attorney's fees for abuse of discretion." *Dean v. Riser*, 240 F.3d 505, 507 (5th Cir. 2001) (citing *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985)). "[N]evertheless, the discretion afforded district courts to deny attorney's fees to prevailing plaintiffs under § 1988 is exceedingly narrow." *Cruz*, 762 F.2d at 1233 (internal quotation marks and

citation omitted); *see also Pruett v. Harris Cnty. Bail Bond Bd.*, 499 F.3d 403, 417 (5th Cir. 2007) ("[T]he discretion to deny § 1988 fees is . . . extremely narrow." (ellipsis in original) (internal quotation marks and citation omitted)). "In evaluating whether the district court abused its discretion to award attorney's fees, this Court reviews the factual findings supporting the grant or denial of attorney's fees for clear error and the conclusions of law underlying the award *de novo.*" *Dearmore v. City of Garland*, 519 F.3d 517, 520 (5th Cir. 2008). "[T]he characterization of prevailing-party status for awards under fee-shifting statutes such as § 1988 is a legal question subject to *de novo* review." *Id.* (alteration in original) (internal quotation marks and citation omitted). And a district court's "erroneous interpretation of the special circumstances that . . . could render an award unjust" is an abuse of discretion. *Pruett*, 499 F.3d at 417; *see also id.* ("We have held that given the strong policy behind § 1988 of awarding fees to prevailing plaintiffs, defendants must make an 'extremely strong showing' of special circumstances to avoid paying attorneys' fees . . . ." (citation omitted)).

## DISCUSSION

There are no lingering merits issues in this appeal. The merits have been conclusively decided in Appellants' favor, without any appeal by the City. Instead, the sole issue on appeal is whether the district court erred when it denied Appellants' motion for attorneys' fees.

### I.     Prevailing-Party Status

As a preliminary matter, Appellants were the "prevailing parties" in the underlying litigation. Section 1988 provides for attorneys' fees to prevailing parties in civil-rights cases: "In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the *prevailing party*, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b) (emphasis added). "The touchstone

of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989). Significant here, the Supreme Court has emphasized that "the prevailing party inquiry does not turn on the magnitude of the relief obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

The Supreme Court reiterated this point recently in *Lefemine v. Wideman* when it explained that a plaintiff prevails "'when actual relief on the merits of [the plaintiff's] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" 133 S. Ct. 9, 11 (2012) (per curiam) (quoting *Farrar*, 506 U.S. at 111–12). The Court continued that it has "repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy that test." *Id.* (citing *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (per curiam)). The Court thus concluded that the plaintiffs in *Lefemine*, who had not obtained nominal damages, but instead had obtained a permanent injunction against the defendant police officers for violations of their First Amendment rights, were prevailing parties under § 1988. *Id.* at 10–11. The Court rejected the Fourth Circuit's reasoning that a denial of fees was appropriate because the injunction merely ordered the defendants to comply with the law and because no other damages were awarded. *Id.* at 11. The Court then remanded for the lower courts to conduct the special-circumstances inquiry to determine whether "there may be other grounds on which the police officers could contest liability for fees." *Id.* at 12.

Here, the issue of Appellants' prevailing-party status has been conclusively resolved. The district court concluded that Appellants are prevailing parties within the meaning of § 1988. *See* Fee Order at 2–3. The City did not appeal that determination. And although, on appeal, the City

states in a footnote that it "disputes" prevailing-party status, the State conceded at oral argument that it is not challenging Appellants' prevailing-party status on appeal. *Cf. Art Midwest, Inc. v. Atl. Ltd. P'ship XII*, 742 F.3d 206, 211–12 (5th Cir. 2014) (holding that a party's failure to cross-appeal an adverse ruling in an initial district court proceeding bars that party from revisiting that ruling on remand). In any event, the argument that Appellants were not prevailing parties fails because Appellants obtained the declaratory and injunctive relief they sought. *See Lefemine*, 133 S. Ct. at 11. That Appellants did not obtain the nominal damages that they sought does not alter their prevailing-party status. *See id.* (concluding that plaintiffs were prevailing parties when they obtained an injunction but not nominal damages).

## II.     Special Circumstances

Having concluded that Appellants are the prevailing parties, the next issue is whether the district court erred in concluding that "special circumstances" rendered the award of fees unjust. Under § 1988, "a prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotation marks and citation omitted).

The special-circumstances exception is a narrow carve-out of the general rule that prevailing civil-rights plaintiffs should be awarded fees. It is true that the plain language of the statute grants district courts discretion to determine whether to award the prevailing party a reasonable attorney's fee, *see* 42 U.S.C. § 1988(b) (stating that a court "may" award fees "in its discretion"), but the judicial gloss on § 1988, and its legislative history, have constrained that discretion, in most cases converting the statute's "may" into a "must." Indeed, "in [the] absence of special circumstances a district court not merely 'may' but *must* award fees to the prevailing plaintiff." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989) (interpreting Title VII's nearly identical fee

provision). This court has held that, "absent special circumstances, a prevailing plaintiff should be awarded section 1988 fees *as a matter of course*." *Cruz*, 762 F.2d at 1233 (internal quotation marks and citation omitted). This court has further emphasized that "[b]ecause Congress believed that the incentive of attorney's fees was critical to the enforcement of the civil rights laws, section 1988 requires *an extremely strong showing of special circumstances* to justify a denial of fees." *Hous. Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 623 (5th Cir. 2007) (internal quotation marks and citation omitted); *see also Espino v. Besteiro*, 708 F.2d 1002, 1005 (5th Cir. 1983) ("[T]he special circumstances exception to the general rule requiring the award of fees is an extremely limited one."); *Riddell v. Nat'l Democratic Party*, 624 F.2d 539, 544–45 (5th Cir. 1980) (providing examples of cases that might satisfy the special-circumstances exception).[3]

---

[3] Other circuits have similarly read § 1988's discretion narrowly. *See, e.g., Vasquez v. Rackauckas*, 734 F.3d 1025, 1055 (9th Cir. 2013) ("[A] court's discretion to deny fees under § 1988 is very narrow and . . . fee awards should be the rule rather than the exception." (alterations in original) (internal quotation marks and citation omitted)); *De Jesús Nazario v. Morris Rodríguez*, 554 F.3d 196, 200 (1st Cir. 2009) ("[D]espite the permissive phrasing of the Fees Act, [fee] awards in favor of prevailing civil rights plaintiffs are virtually obligatory." (alteration in original) (internal quotation marks and citation omitted)); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 421 F.3d 417, 422 (6th Cir. 2005) ("[T]he burden is on the non-prevailing party to make a strong showing that special circumstances warrant a denial of fees." (internal quotation marks and citation omitted)); *Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 895–96 (D.C. Cir. 2004) ("[I]t is now axiomatic that . . . the discretion of a district court in deciding *whether* to award . . . fees to a prevailing party is narrowly limited." (first ellipsis in original) (internal quotation marks and citation omitted)); *Peter v. Jax*, 187 F.3d 829, 837 (8th Cir. 1999) ("Because the language of § 1988 does not include the 'special circumstances' exception, this judicially created exception should be narrowly construed." (internal quotation marks and citation omitted)). The Supreme Court has also observed that § 1988's legislative history confirms that the discretion the statute grants district courts is narrow. *See Hensley*, 461 U.S. at 430 (explaining that fees "ordinarily" should be awarded to prevailing parties as a matter of course (quoting S. Rep. No. 94-1011, at 5912 (1976))); *see also Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 247 (1985) (recognizing "Congress' general intent for 'the courts to use the broadest and most effective remedies available to achieve the goals of our civil rights laws.'" (quoting S. Rep. No. 94-1011, at 5910–11)).

On appeal, the City conflates the prevailing-party inquiry and the special-circumstances inquiry. In support of this approach, the City states that "[a]rguments applicable to prevailing party status, which the City disputes, are equally applicable to attorney's fees either directly or by analogy." This argument is flawed for two reasons. First, the case that the City cites for that proposition, *LLEH, Inc. v. Wichita County, Texas*, 289 F.3d 358, 371 (5th Cir. 2002), is inapposite. In that case, this court did not discuss the special-circumstances analysis; instead, given its disposition of the appeal on the merits, it remanded for a determination as to whether the plaintiffs still could be considered prevailing parties. *See id.* Second, the City's proposition is incorrect. The two inquiries—prevailing-party status and special circumstances—are distinct. *See Lefemine*, 133 S. Ct. at 11–12; *cf. Farrar*, 506 U.S. at 114 ("Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988. Once civil rights litigation materially alters the legal relationship between the parties, the degree of the plaintiff's overall success goes to the reasonableness of a fee award . . . ." (internal quotation marks and citation omitted)). And as discussed above, Appellants' prevailing-party status has already been conclusively resolved.

Turning to the district court's analysis, we agree with Appellants that the district court's special-circumstances finding was an abuse of discretion. In denying fees, the district court identified two factors that it believed were special circumstances: the "limited nature and scope" of the injunctive relief that Appellants won and the "limited injury" to Appellants' rights. Fee Order

11

at 3. As a matter of law, these factors are relevant to the reasonableness of a fee request; however, they play no role in the special-circumstances analysis.[4]

A prevailing plaintiff's degree of success is not a special circumstance that justifies a complete denial of § 1988 fees. Instead, "the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*, not to the availability of a fee award *vel non*." *Tex. State Teachers Ass'n*, 489 U.S. at 793; *cf. City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("We reject the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers."). Consistent with this instruction, this court has held that plaintiffs' obtaining only partial relief is not a special circumstance rendering an award unjust. *See Pruett*, 499 F.3d at 418 ("Under *Hensley*'s standard for partial success (a different standard than the 'special circumstances' that occasionally allow a defendant to avoid attorneys' fees altogether), a court may award reduced fees to plaintiffs that are prevailing parties but have lost on some claims."); *Hous. Chronicle*, 488 F.3d at 624 (reversing the district court's denial of attorneys' fees, even while partially reversing the district court's holding that a statute was unconstitutional, because the district court did not provide any explanation for its denial of fees, plaintiffs remained prevailing parties in large part, and plaintiffs obtained the primary relief they sought in court); *Hopwood v. Texas*, 236 F.3d 256, 278 (5th Cir. 2000) (concluding that the district court "properly accounted for the Plaintiffs' lack of success in obtaining monetary and other direct relief by reducing" their fee award but rejecting defendant city's argument that the district court should have denied fees

---

[4] Because we conclude that the district court made an error of law in finding special circumstances, we do not reach Appellants' alternative argument that the district court abused its discretion in raising the special-circumstances exception *sua sponte* as a basis for denying fees.

entirely, noting that plaintiffs achieved "the principal goal of their lawsuit" when they obtained injunctive relief barring the law school's use of racial preferences in admissions).[5]

Contrary to the cases that the City relies on, the same is true of a prevailing plaintiff's limited injury. First, the City relies on the district court's decision on remand from the Supreme Court in *Lefemine v. Wideman,* C.A. No. 8:08-3638-HMH, 2013 WL 1499152, at *4 (D.S.C. Apr. 9, 2013), where the district court again denied fees, finding three special circumstances: the defendant's qualified immunity, the absence of a policy or custom of discrimination by the defendants, and "the limited nature of the injunctive relief." Tellingly, however, the Fourth Circuit reversed the district court, holding that none of those factors could constitute special circumstances that justified the denial of fees. *See Lefemine v. Wideman,* 758 F.3d 551, 552, 559 (4th Cir. 2014). The Fourth Circuit reasoned that "neither [the Fourth Circuit] nor the Supreme Court has ever suggested that a plaintiff's inability to bring a viable *Monell* claim against a government entity somehow blocks otherwise prevailing civil rights plaintiffs from obtaining their attorneys' fees under Section 1988." *Id.* at 558.[6] The Fourth Circuit reasoned further that the limited

---

[5] Other circuits have reasoned to similar conclusions. *See, e.g.*, *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014) (noting that "degree of success" goes to the amount of the fee award); *Resurrection Bay Conservation Alliance v. City of Seward, Alaska*, 640 F.3d 1087, 1094 (9th Cir. 2011) (rejecting the district court's conclusion that the plaintiff's failure to obtain the damages it sought in a citizen enforcement suit constituted a special circumstance because victory was significant in furthering the statute's purpose); *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1082 (10th Cir. 1998) (rejecting as a special circumstance the argument that the "nature" of plaintiff's victory is "at most . . . nominal or moral"); *Crowder v. Hous. Auth. of City of Atlanta*, 908 F.2d 843, 850 (11th Cir. 1990) (concluding that plaintiffs were prevailing parties and then rejecting the district court's determination that plaintiffs' "marginal" success constituted special circumstances because it had already "decided as a matter of law that the plaintiffs prevailed on a significant issue in which they achieved some of the benefit sought").

[6] The City devotes a portion of its brief to the argument that Appellants failed to prove that the City had a policy or custom that could trigger municipal liability. As noted above,

nature of the injunctive relief was not a special circumstance because the plaintiff obtained two of the remedies that he sought—an injunction and declaratory relief—and the injunction was broader than the district court acknowledged because it barred the defendants from future violations of the plaintiff's First Amendment rights. *See id.* at 558–59. Similarly, here, Appellants obtained two of the remedies they sought—an injunction and declaratory relief—and the injunction prohibited the City from enforcing its policy by issuing CTNs. *See* Merits Order at 18.

The City's reliance on *Farrar v. Hobby,* 506 U.S. 103 (1992), is also misplaced. Citing *Farrar* for support, the City argues that Appellants' injury and victory merely were technical or *de minimis* and thus justify a wholesale denial of fees. It is true that the Court in *Farrar* stated that, "[i]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." 506 U.S. at 115. The Court clarified, however, that a plaintiff who formally prevails, yet should receive zero fees, is one "who seeks compensatory damages but receives no more than nominal damages." *Id.* Thus, "[i]n a civil rights suit *for damages*, . . . the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury." *Id.* (emphasis added). Here, by contrast, Appellants sued for declaratory and injunctive relief and only nominal damages. Thus, *Farrar* does not control. *See Riley v. City of Jackson, Miss.,* 99 F.3d 757, 759–60 (5th Cir. 1996) (distinguishing *Farrar* as "illustrative of cases where the plaintiff sought only money damages and was essentially unsuccessful since he did not achieve in any way the ultimate goal of the litigation"); *Pembroke v. Wood Cnty., Tex.,* 981 F.2d 225, 231 n.27 (5th Cir. 1993) (noting that *Farrar* does not control when

---

the City raised this *Monell* argument in the district court, and the district court rejected the argument in an order that the City did not appeal. The City therefore cannot challenge that conclusion on appeal.

the plaintiffs are seeking prospective remedies only); *see also Hescott v. City of Saginaw*, 757 F.3d 518, 524–25 (6th Cir. 2014) (distinguishing *Farrar* on similar grounds and rejecting the argument that the monetary value of plaintiffs' loss weighed in favor of finding a special circumstance). Unlike *Farrar*, Appellants' primary goal in this litigation was to force the City to stop issuing CTNs. Appellants achieved that goal by securing a permanent injunction against future enforcement of the CTN policy. A fee award was therefore appropriate.

Finally, the City points to this court's opinion in *Brister v. Faulkner*, 214 F.3d 675, 686–87 (5th Cir. 2012), to support its argument that the district court properly denied fees based on the allegedly limited injury to Appellants. Again, this case is inapposite, and the City's reliance on it underscores the City's inexact conflation of the prevailing-party and special-circumstances inquiries. In *Brister*, this court affirmed the district court's denial of fees because the plaintiffs were not prevailing parties. *Id.* at 687. There, the defendant university forced the plaintiffs to leave school property because they were blocking patrons' access to the property. *See id.* at 677. In the subsequent litigation, the district court declared the university's total ban on leafleting unconstitutional, but concluded that the university had not violated the plaintiffs' rights because it had removed them from the property for another, permissible reason. *Id.* at 678. Thus, this court affirmed the district court's denial of fees because the plaintiffs' constitutional rights were not violated and therefore the declaratory judgment did nothing to alter their legal relationship with the university. *Id.* at 687. In other words, *Brister* affirmed the denial of fees not because there was a *limited* injury, but because there was *no* injury. Here, by contrast, the district court expressly concluded that "the City's policy on issuing criminal-trespass notices violates Plaintiffs' First and Fourteenth

No. 13-50916

Amendment rights."[7] Merits Order at 1. Moreover, Appellants obtained an injunction against the policy, which vindicated not only their First Amendment rights but also the First Amendment rights of all of the citizens attempting to exercise those rights on City property. In sum, the district court abused its discretion when it relied on limited injury and limited success as special circumstances justifying a wholesale denial of fees.[8] *Klier v. Elf Atochem N. Am., Inc.,* 658 F.3d 468, 474 (5th Cir. 2011) ("By definition, a district court abuses its discretion when it makes an error of law or applies an incorrect legal standard.").

---

[7] The district court's statement, in its order denying fees, that "[t]he court declared the City's policy to be a content-neutral restriction that was unconstitutional on its face, but not as applied," is in tension with statements in both its order denying fees and its order enjoining the policy. *See* Fee Order at 2 ("[T]he court rendered Findings of Fact and Conclusions of Law and Final Judgment, concluding that the city's policy violated *Plaintiffs'* First Amendment right to free speech and Fourteenth Amendment right to due process . . . ." (emphasis added)); Merits Order at 1 ("[T]he court concludes that the City's policy on issuing criminal-trespass notices violated *Plaintiffs'* First and Fourteenth Amendment rights under the United States Constitution." (emphasis added)); *id.* at 14 ("Applying this standard to the City's policy in this case, the court concludes that the policy and the bans imposed on *Plaintiffs* are not narrowly tailored and therefore fail constitutional scrutiny under the First Amendment." (emphasis added)). Finally, in its order denying the City's motion to amend the judgment, the district court explicitly found that the City had subjected Appellants to the unconstitutional policy. *See* Post-Trial Order at 2.

[8] The district court did not address the City's alternative argument that the requested award was unreasonable to the point that it "shocked the conscience" and thus justified the denial of fees. Assuming, however, that the district court impliedly rejected the City's argument, it did not abuse its discretion in doing so. This court has affirmed the denial of conscience-shocking fee requests only in very "extreme" circumstances that are unlike the circumstances in this case. *See Scham v. Dist. Cts. Trying Criminal Cases*, 148 F.3d 554, 556–58 (5th Cir. 1998) (affirming the denial of plaintiffs' fee request seeking over $624,000 in a case that involved stipulated facts, "no meetings of the parties or attorneys, no settlement negotiations, no mediation, no court appearances, and no trial"), *abrogation on other grounds recognized by Bailey v. Mississippi*, 407 F.3d 684, 686 (5th Cir. 2005). This case involved voluminous expedited discovery, several court appearances and telephone conferences, substantial briefing on complex legal issues, and a two-day bench trial within one month of the initiation of the suit. Given these circumstances, Appellants' fee request does not shock the conscience; however, on remand, the district court may, in its discretion, consider whether Plaintiffs' fee request was excessive.

No. 13-50916

Even accepting the district court's consideration of the limited injury and limited scope of the injunction as special circumstances, the district court's factual support for those points is unsupported by record evidence. In its order denying fees, the district court stated that the Occupy protests ended on February 3, 2012, "after the City enacted new rules prohibiting the use of the plaza during certain hours." Fee Order at 3. As a result, the district court stated, "the City's policy was no longer in effect at the time the court rendered" its final judgment, and "the court's order enjoining the enforcement of the City's policy had little or no effect, due to the fact that Plaintiffs were no longer subject to the criminal-trespass notices that they had been issued and that the City's policy was no longer in effect." *Id.* Relying on the district court's reasoning, the City points to no record evidence (other than its own and the district court's statements) that the CTN policy was no longer in effect at the time that the district court entered final judgment. Indeed, in its order enjoining the policy, the district court noted that Occupy protests had ended after the City enacted the new rules closing the plaza, but the district court still enjoined the policy and made no finding that the CTN policy was no longer in effect. *See* Merits Order at 3 n.3, 18.

It may be true that the City stopped issuing *new* CTNs once it disbanded the Occupy Austin protests on February 3, 2012. To be sure, at that point, there were no longer any protesters to whom the City could issue CTNs. But there is no evidence in the record supporting the district court's conclusion that the "policy was no longer in effect" or that the City no longer had legal authority to issue CTNs. Tellingly, at oral argument, the City would not concede that the curfew and reservation policies repealed or amended the CTN policy or that these new policies halted enforcement of CTNs that had already been issued. In short, the district court's finding that the CTN policy was no longer in effect

17

was clearly erroneous, and it was also an abuse of discretion to deny fees on that basis.

### III.    Calculation of Award

Finally, although the district court abused its discretion in awarding zero fees based on Appellants' degree of success, the district court nevertheless retains discretion to consider that factor when setting a reasonable fee amount. *Farrar*, 506 U.S. at 114. Because the district court did not conduct any analysis or make any findings as to the reasonableness of Appellants' fee request,[9] we remand this case to the district court with directions to award attorneys' fees, in the first instance, consistent with this court's criteria. *See Aware Woman Clinic, Inc. v. City of Cocoa Beach, Fla.*, 629 F.2d 1146, 1150 (5th Cir. 1980) (per curiam); *see also Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379–80 (5th Cir. 2010) (articulating a two-step process for determining a fee award under § 1988). On remand, we further direct the district court to award Appellants their costs and attorneys' fees incurred in successfully prosecuting this appeal. *See Aware Woman Clinic*, 629 F.2d at 1150 ("Although we have discretion to award costs and fees arising out of an appeal to this court, considerations of judicial economy call for the district court to determine the total award in this case.").

### CONCLUSION

For the foregoing reasons, we REVERSE the district court's denial of fees and REMAND to the district court to make the requisite findings in the first instance.

---

[9] Appellants sought fees in the amount of $318,879.00, costs in the amount of $3,951.20, and expenses in the amount of $3,231.21. The City did not object to the costs.